**MARLIN & SALTZMAN, LLP**
Alan S. Lazar, Esq. (SBN 125820)
Cody R. Kennedy, Esq. (SBN 296061)
29800 Agoura Road, Suite 210
Agoura Hills, California   91301
Telephone:   (818) 991-8080
Facsimile:    (818) 991-8081
alazar@marlinsaltzman.com
ckennedy@marlinsaltzman.com

**D.LAW, INC.**
Emil Davtyan, Esq. (SBN 299363)
400 N. Brand Blvd, 7th Floor
Glendale, California   91203
Telephone:   (818) 875-2008
Facsimile:    (818) 722-3974
emil@d.law.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM WIGHTMAN, ON BEHALF OF HIMSELF AND FOR ALL OTHER CURRENT AND FORMER AGGRIEVED EMPLOYEES,<br><br>                    Plaintiffs,<br><br>v.<br><br>COBHAM ADVANCED ELECTRONIC SOLUTIONS INC.; AND DOES 1 - 100, INCLUSIVE,<br><br>                    Defendants. | CASE NO. 3:21-cv-01784-TWR-DEB (Assigned: Judge Todd W. Robinson)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:        March 14, 2024<br>TIME:        1:30 p.m.<br>CTRM:      3A<br><br>*(Filed concurrently with Declaration of Cody R. Kennedy; Declaration of Emil Davtyan)*<br><br>Trial Date:                Not Yet Set<br>Pretrial Conference:   June 6, 2024<br>Complaint Filed:       September 3, 2021 |

**TO THE HONORABLE COURT, ALL PARTIES & THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 14, 2024, at 1:30 p.m., or as soon thereafter as the matter can be heard in Courtroom No. 3A, in the U.S. District Court located at 221 W. Broadway, San Diego, California, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff will and hereby, and does, move for an order that this case be maintained as a class action for the purposes of settlement under Federal Rule of Civil Procedure ("Rule") 23, on behalf of a settlement class comprised of Plaintiff and all other persons similarly situated, for an order directing notice to the class, and for a scheduling order setting a Fairness Hearing for final approval of the proposed settlement.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Cody Kennedy and Emil Davtyan, and all documents and arguments in support thereof.

Plaintiff requests the following relief:

1. Preliminary approval of the Class Action Settlement, ("Settlement") attached as Exhibit 1 to the Declaration of Cody Kennedy ("Kennedy Decl."), and all related notice and other deadlines as set forth in the agreement or as otherwise ordered by the Court subject to the terms and conditions of the agreement so that Plaintiff may then move the Court for Final Approval of the Settlement Agreement;

2. Conditional certification of the Settlement Classes as defined in the Settlement;

3. The appointment of Alan Lazar, and Cody Kennedy of Marlin & Saltzman LLP and Emil Davtyan of D.Law, Inc. as Settlement Class Counsel.

4. The appointment of Plaintiff William Wightman as the Class Representative;

5. An Order directing the dissemination of the notice of class action settlement to the Settlement Class, via United States First-Class Mail as proscribed by the

Settlement;

6.    Appointment of a Settlement Administrator;

7.    An Order setting a schedule for the dissemination of notice to the Settlement Class; deadlines for Settlement Class Members to opt-out of the Settlement; and deadlines for Settlement Class Members to object to the settlement or to enter an appearance through counsel; and for a Fairness Hearing to address final approval of the Class Action Settlement Agreement following the notice period.

8.    Any other relief that the Court deems just and equitable under the circumstances.


DATED:  January 2, 2024              **MARLIN & SALTZMAN**


                                     By  *s/ Cody R. Kennedy*
                                         _____
                                         Alan S. Lazar
                                         Cody R. Kennedy
                                         Attorneys for Plaintiffs

1
2

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ......................... 1

      A.   PLEADINGS AND MATERIAL ALLEGATIONS ................................. 1

      B.   DISCOVERY BEFORE CLASS CERTIFICATION ............................... 2

      C.   THE PARTIES' MEDIATION EFFORTS ................................................. 3

III.  SUMMARY OF SETTLEMENT TERMS ........................................ 4

      A.   MAXIMUM SETTLEMENT AMOUNT, ATTORNEY FEES
           AND COSTS, CLASS REPRESENTATIVE SERVICE
           AWARDS AND PAGA ALLOCATION........................................ 4

      B.   CLASS RELEASES AND ALLOCATION.......................................... 4

      C.   SETTLEMENT ADMINISTRATION AND NOTICE ............................ 6

      D.   DISPOSITION OF UNCASHED CHECKS AND RESERVE
           FUND ............................................................................................ 6

IV.   LEGAL STANDARD FOR PRELIMINARY APPROVAL OF
      CLASS ACTION SETTLEMENTS IN THE NORTHERN
      DISTRICT ................................................................................. 7

V.    THE COURT SHOULD PRELIMINARILY APPROVE THE
      SETTLEMENT BECAUSE IT IS "FAIR, REASONABLE AND
      ADEQUATE" UNDER RULE 23(E) (2) AND THE *CHURCHILL*
      FACTORS ...................................................................................... 8

      A.   CLASS COUNSEL AND PLAINTIFFS ADEQUATELY
           REPRESENTED THE CLASS ........................................................ 8

      B.   THE PROPOSAL WAS NEGOTIATED AT ARM'S LENGTH
           ................................................................................................. 9

      C.   THE RELIEF PROVIDED FOR THE CLASS IS ADEQUATE
           ................................................................................................. 9

           1.   The Relief Is Adequate, Given the Costs, Risks, and
                Delay of Trial and Appeal ............................................... 10

           2.   The Proposed Method of Distributing relief to the Class
                is Effective. ...................................................................... 11

           3.   The Proposed Award of Attorney Fees is Fair. ............... 12

           4.   Any Agreement Required to be Identified Under Rule
                23(e) (3) ........................................................................... 14

iv

D.    THE PROPOSED SERVICE AWARD IS FAIR. ....................................14

E.    CLASS MEMBERS WILL BE TREATED EQUITABLY RELATIVE TO ONE ANOTHER ...........................................15

F.    SETTLEMENT ADMINISTRATION .....................................16

G.    NOTICE. ...........................................................................16

H.    OPT OUTS. ........................................................................16

I.    OBJECTIONS. ...................................................................16

J.    TIMELINE. .......................................................................16

K.    CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS. ...........................................................16

VI.    THE PAGA ALLOCATION IS PROPER .....................................17

VII.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .................17

VIII.    CONCLUSION ...............................................................18

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

Cases

*Amaral v. Cintas Corp. No. 2*,
163 Cal.App.4th 1157 (2008) ......................................................... 17

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................... 17

*Barcia v. Contain-A-Way, Inc.*,
2009 WL 587844 (S.D. Cal. 2009) ................................................ 15

*Boeing Co. v. Van Gernert*,
444 U.S. 472 (1980) ...................................................................... 13

*Chavez v. Netflix, Inc.*,
162 Cal. App. 4th 43 (2008) .......................................................... 12

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ........................................................... 8

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ......................................................... 7

*Dugan v. Lloyds TSB Bank, PLC*,
2014 WL 1647652 (N.D. Cal. 2014) ............................................. 14

*Fernandez v. Victoria Secret Stores, LLC*
2008 WL 8150856 (C.D. Cal. 2008) ............................................. 13

*Fulford v. Logitech, Inc.*,
2010 U.S. Dist. LEXIS 144437 (N.D. Cal. 2010) .......................... 15

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 U.S. Dist. LEXIS 49477 (N.D. Cal. 2010) ........................... 15

*Hensley v. Eckerhart*
461 U.S. 424 (1983) ...................................................................... 13

*In re M.D.C. Holdings Securities Litigation*
1990 WL 454747 (S.D. Cal. 1990) ............................................... 13

*In re NVIDIA GPU Litig.*,
539 F. App'x 822 (9th Cir. 2013) .................................................... 9

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ......................................................... 7

*Lealao v. Beneficial Cal., Inc.*
(2000) 82 Cal.App.4th 19 .......................................................... 12, 13

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) ........................................................... 8

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Norton v. LVNV Funding, LLC*,
   2021 WL 3129568 (N.D. Cal. 2021) ................................................................. 9

*Ruiz v. XPO Last Mile, Inc.*,
   2017 WL 6513962 (S.D. Cal. 2017) ................................................................. 14

*Saechao v. Landrys, Inc.*,
   2016 WL 3227180 (N.D. Cal. 2016) ................................................................. 17

*Serrano v. Priest*
   20 Cal. 3d 25 (1977) ......................................................................................... 13

*Viceral v. Mistras Group, Inc.*,
   2016 WL5907869 (N.D. Cal. 2016) ................................................................. 17

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ............................................................................. 13

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ..................................................................... 12, 14


Statutes

Labor Code § 226 .................................................................................... 1, 5, 10

Labor Code § 2699(e)(2) ............................................................................... 17


Rules

Fed R. Civ P. 23(e)(2) ................................................................................. 7, 15

Fed. R. Civ. P. 23 (e)(2)(D) ............................................................................ 15

Fed. R. Civ. P. 23(e) ...................................................................................... 7, 8

Fed. R. Civ. P. 23(e)(1)(A) ............................................................................... 7

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................... 7

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................... 9

Fed. R. Civ. P. 23(e)(2)(C) ............................................................................... 9

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# I.     INTRODUCTION

After years of hard fought litigation the parties have reached a settlement of this class action and representative PAGA lawsuit. The settlement (Kennedy Decl. Exh. A) provides for a non-reversionary common fund of $4,000,000 (four million dollars). No class member will have to make a claim, instead checks will be mailed directly to them. No money will revert to the Defendant and any deductions from the fund not approved by the Court will go back into the net settlement fund.

The instant settlement was reached after nearly 2.5 years of litigation, extensive discovery having been conducted (including the exchange and expert review of documents and data applicable to thousands of class members), the depositions of nine separate 30(b)6 corporate witnesses, the filing of Plaintiff's class certification motion, a private mediation, and two Court-led mandatory settlement conferences. Due to the extent and duration of litigation, the parties were in a very good position to evaluate the risks of trying the case versus accepting Hon. Judge Butcher's MSC proposal of a $4,000,000 settlement.   For the reasons set forth herein, it is Plaintiff's Counsel's experienced opinion and belief that the proposed settlement is an excellent outcome, that preliminary approval should be granted and that Notice should be issued to the class.

# II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

## A.     PLEADINGS AND MATERIAL ALLEGATIONS

On September 3, 2021, Plaintiff William Wightman commenced this action against defendant Cobham Advanced Electronic Solutions, Inc. in the Superior Court of California, County of San Diego. Plaintiff asserted causes of action for (1) failure to pay hourly wages (Labor Code §§ 510, 558, 1194, and 1198); (2) failure to provide uninterrupted employee meal periods (Labor Code §§ 226.7 and 512(a)); (3) failure to provide uninterrupted employee rest periods (Labor Code §§ 226.7); (4) failure to provide accurate written wage statements (Lab. Code § 226); (5) Unfair Competition (Bus. & Prof. Code §§ 17200, et seq.); and (6) violation of California's Private

1

Attorneys General Act (PAGA) (Labor Code §§ 2698, et seq.). The action was removed to the United States District Court, Southern District of California on October 18, 2021. Dkt. 1-1, ¶ 4, Ex. C. On July 8, 2022, Plaintiff filed his First Amended Complaint ("FAC") to correct a clerical error on the caption page and to add additional factual allegations supporting the same previously asserted causes of action. Dkt. 15.

As this Court may recall from Plaintiffs' class certification filing (Dkt No. 41), Defendant manufactures components used in applications across the United States aerospace and defense industry. It operates two production facilities in California. Plaintiff was employed by Defendants from approximately June 2020 to approximately August 2020 as a nonexempt production employee at its San Diego facility.

Plaintiff has alleged that Defendant's time keeping practices were inadequate and did not capture certain work tasks performed by its employees. The alleged uncaptured work time, in-turn, gives rise to each of the violations asserted in the operative complaint ranging from unpaid time/overtime to derivative violations for the shortened/late/interrupted meal breaks caused by the off-the-clock work and wage statement violations arising from the failure to capture (and pay for) all time worked. Specific unpaid tasks at issue in this action include:

- Pre-shift walk-time while subject to Defendant's on-site rules and regulations prior to the proposed Class reaching their workstations.
- Time spent in designated areas donning and doffing work equipment before clocking in, during meal breaks, and after clocking out.
- Pre-shift Covid-19 screenings.

**B.    DISCOVERY BEFORE CLASS CERTIFICATION**

Prior to the proposed settlement being reached ample discovery was conducted both formally and informally. Formally, Plaintiff propounded three sets of document production requests, two sets of interrogatories, and one set of requests for admissions. As a result, Defendants provided substantive interrogatory and admission responses along with over **fifty-nine thousand (59,000)** pages of documents for Plaintiff's

examination and review. Defendant also provided detailed electronic records relating to class member time/pay, and badge swipe data. In order to obtain such a massive production, Plaintiff was forced to engage in numerous meet and confer efforts with Defendant and filed at least one informal discovery letter brief with this Court. In addition to the detailed written discovery outlined herein, the **depositions of nine (9) of Defendant's designated 30(b)(6) witnesses were taken**. Those depositions proved key in analyzing the documents, responses, and policies produced by Defendants and the testimony ultimately solicited added substantial weight to Plaintiff's class certification motion. Further, Plaintiff engaged a highly respected data analysis expert, Sean Chasworth of Phillips, Fractor & Company, LLC, to analyze data and evidence in this case for purposes of both mediation and class certification.

Additionally, as part of a pre-mediation informal discovery exchange in anticipation of the Parties' earlier private mediation before esteemed mediator Steve Pearl, Defendant identified the number of putative class members and aggrieved employees, the number of workweeks for all putative class members, and for the subset of aggrieved employees, and produced a sampling of class member pay and time records for approximately 15% of the putative class members and the policy and procedure documents applicable to putative class members and aggrieved employees during the relevant time period.

## C.    THE PARTIES' MEDIATION EFFORTS

During the course of litigation the parties engaged in extensive settlement discussions and negotiations including, but not limited to, participating in one private mediation session along with a court-ordered Early Neutral Evaluation session and Mandatory Settlement Conference. As the Court may recall, the initial Early Neutral Evaluation session was unsuccessful with little progress being made by the Parties. On January 11, 2023 private mediation was held before esteemed mediatory Steve Pearl. In advance of said mediation the above-mentioned informal discovery exchange occurred and detailed mediation briefs were submitted by each Party. Despite a full day

of mediation the Parties were unable to reach a settlement agreement. On August 22, 2023, the parties attended a Mandatory Settlement Conference ("MSC") with U.S. Magistrate Judge Daniel E. Butcher. At the conclusion of the MSC, Judge Butcher made a mediator's proposal, which both parties ultimately accepted on September 13, 2023.

## III.    SUMMARY OF SETTLEMENT TERMS

### A.    MAXIMUM SETTLEMENT AMOUNT, ATTORNEY FEES AND COSTS, CLASS REPRESENTATIVE SERVICE AWARDS AND PAGA ALLOCATION

The Settlement Agreement provides for a Gross Settlement Amount of $4,000,000. Declaration of Cody Kennedy, Exhibit 1, Settlement Agreement ("SA") ¶ 20.

Settlement checks will be mailed directly to class members unless they opt out. SA ¶ 48(a). Any uncashed checks will be sent to the State of California's unclaimed property fund to be held in the class member's name. SA ¶ 48(a)(iv).

Subject to court approval, the following amounts will be deducted from the Gross Settlement Amount: 1) Attorney fees in the amount of up to one third of the Gross Settlement Amount ($1,333,333); 2) costs not to exceed actual out-of-pocket costs incurred, but also not to exceed $80,000; 3) Settlement Administration Expenses of up to $17,500; and 4) a Service Enhancement not to exceed $37,500. SA ¶ 48.

Any amounts for attorney fees, expenses, class representative service awards, or settlement administration expenses not approved by the Court will be reallocated to the Net Settlement Fund. SA ¶ 48.

The PAGA Settlement Fund is $150,000. SA ¶ 25. The PAGA Settlement Fund will be divided with 75% going to the California Labor Workforce Development Agency (LWDA) and 25% going to the PAGA Group Members. Id.

The remaining Net Settlement Fund is designated as the Class Settlement Fund.

### B.    CLASS RELEASES AND ALLOCATION

The Settlement Class is Defined as:

1

2    All individuals who worked for Defendants in California as a non-exempt, hourly

3    paid employee at any time during the period from September 3, 2017 through the

     date of preliminary approval.

4    SA ¶ 6.

5        The Settlement Class Members are releasing the following claims:

6    [A]ll claims, demands, rights, liabilities, and/or causes of action of any nature and

7    discretion whatsoever, known or unknown, in law or in equity, whether or not

8    concealed or hidden, that have been asserted or that might have been asserted, arising

     during the period from and including September 3, 2017 through the date of

9    preliminary approval which were alleged or could have been alleged based upon the

10   facts asserted in the Complaint or First Amended Complaint for unpaid wages other

     compensation allegedly owed, or for damages, penalties (including without

11   limitation waiting time penalties under Labor Code section 203), restitution, interest,

12   liquidated damages, attorneys' fees, or costs, or any other recovery based on or

13   arising out of the claims and allegations alleged in the Complaint or First Amended

     Complaint Pursuant To California Code Of Civil Procedure § 382 or FRCP 23,

14   including under the California Labor Code and corresponding provisions of Wage

15   Orders, for: (1) Failure to Pay Wages Including Overtime as Required by Labor

     Code §§ 510 and 1194; (2) Failure to Provide Meal Periods as Required by Labor

16   Code §§ 226.7, 512, and IWC Wage Order 7-2001; (3) Failure to Provide Rest

17   Periods as Required by Labor Code §§ 226.7, 512; (4) Failure to Provide Accurate

     Itemized Wage Statements as Required by Labor Code § 226; (6) Violation of

18   California Business & Professions Code sections 17200 et seq.; and (8) any and all

19   corresponding claims that could have been brought under California or federal law

20   relating to the claims and/or facts alleged in the complaint including under the Fair

     Labor Standards Act (FLSA) that might have occurred during the Class Period based

21   on facts and claims alleged in the complaint, including claims for failure to pay

     wages (including overtime or premium wages) due to time worked but not recorded.

22   SA ¶ 46(a).

23       The PAGA Group Members and the LWDA are releasing the following claims:

24   [A]ll claims, demands, rights, liabilities, and/or causes of action of any nature and

25   discretion whatsoever, known or unknown, in law or in equity, whether or not

     concealed or hidden, that have been asserted or that might have been asserted in the

26   Complaint and First Amended Complaint and Plaintiff's Notice to the LWDA based

27   upon the facts alleged therein, arising during the period from and including

     September 3, 2020 through the date of preliminary approval for claims under the

28   California Private Attorneys General Act ("PAGA"), Labor Code section 2699, et.

     seq., regardless of whether they opt-out of the Class Settlement.

SA ¶ 46(b).

The "PAGA [release] Period" means the period from September 3, 2020 through the date of preliminary approval. SA ¶ 26

These releases are specifically tailored to encompass only the Class Action and PAGA periods respectively, and to release only those claims which were directly asserted, or could have been asserted, based upon the facts alleged in Plaintiff's Complaint.

## C.    SETTLEMENT ADMINISTRATION AND NOTICE

No claim form will be required to receive a Settlement Payment. Each Settlement Class Member and PAGA Group Member will be mailed the Settlement Notice. SA ¶ 47. Class Members will have forty-five (45) days from the date of mailing the Settlement Notice to submit a Request for Exclusion or to object to the Settlement, i.e. the Response Deadline. SA ¶ 42. If a Notice Packet is re-mailed to a Class Member less than ten (10) calendar days prior to the Response Deadline, the Class Member shall have their Response Deadline extended by ten (10) calendar days from the date the Settlement Administrator re-mails the Notice Packet.  SA ¶ 47(a)(ii).

Class and PAGA Group Members will also have until the Response Deadline to submit a challenge to the Settlement Administrator regarding their number of workweeks for purposes of the calculation of their settlement allocation. SA ¶ 47(d). Settlement Class Members submitting such a challenge will be required to submit documentation, and the final decision on whether a challenge is accepted will be made by the Settlement Administrator. *Id.*

## D.    DISPOSITION OF UNCASHED CHECKS AND RESERVE FUND

Settlement Class Members and PAGA Group Members will have 180 calendar days after issuance to cash their checks. SA ¶ 48(a)(iv).  Any uncashed funds remaining after the mailing of the replacement postcards will be sent to California's unclaimed property fund. *Id.*

/ / /

1
2

## IV.    LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS IN THE NORTHERN DISTRICT

3
4
5
6

There is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

7
8
9
10
11
12
13
14
15
16

Federal Rule of Civil Procedure 23(e) sets forth a multi-step process for determining whether a proposed class action settlement should be preliminarily approved by the Court. The parties must first "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. Proc. 23(e)(1)(A). Then, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. Proc. 23(e)(1)(B). Federal Rule of Civil Procedure 23(e)(2), in turn, provides:

17
18
19
20
21
22
23
24
25
26
27

> "If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is ***fair, reasonable, and adequate*** after considering whether:
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and

28

(D) the proposal treats class members equitably relative to each other."[1]

*Id.* (emphasis added). As shown below, the settlement here meets the Rule 23(e) factors.

## V. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT BECAUSE IT IS "FAIR, REASONABLE AND ADEQUATE" UNDER RULE 23(E) (2) AND THE *CHURCHILL* FACTORS

### A. CLASS COUNSEL AND PLAINTIFFS ADEQUATELY REPRESENTED THE CLASS

Counsel representing the class must be qualified, experienced, and capable of conducting the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Here, Marlin and Saltzman and D.Law are highly experienced and skilled Plaintiff's class action firms that worked efficiently and diligently before resolving the case. Kennedy Decl. ¶¶ 17-24; Davtyan Decl. ¶¶ 2-5. Plaintiff's Counsel have previously submitted declarations detailing their experience and adequacy to serve as Class Counsel in this matter. See Dkt Nos. 41-1, 41-5. Notably, Marlin & Saltzman has obtained over 1 billion dollars in recoveries for its clients, nearly all of which has been a result of successful prosecution and settlement of wage and hour class and PAGA

---

[1] The Ninth Circuit Court of Appeals has identified eight factors district courts may also consider in evaluating the fairness and adequacy of a pending settlement: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement ("***Churchill* Factors**"). *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575–76 (9th Cir. 2004). Factors 1-4 and 6 are duplicative of the Rule 23(e) factors. As to factor 5, as detailed herein there has been extensive discovery. Factor 7 is not applicable, although the LWDA will receive notice of the settlement. Factor 8 will be relevant upon final approval when the class will have had the opportunity to request exclusion or object.

actions. Further, Marlin & Saltzman has regularly been directly involved in pursuing difficult class action cases through trial and appeal. Counsel have dedicated funds, resources, and highly-experienced attorney manpower towards the litigation of this action for over three years and will continue to do so until this matter is resolved.

A class representative is adequate where they have retained experienced counsel and have actively participated in the litigation. *See e.g. Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2021 WL 3129568, at *8 (N.D. Cal. July 23, 2021). Here, class representative William Wightman has remained dedicated to this case and has spent substantial time and resources assisting Class Counsel throughout this litigation. Kennedy Decl. ¶¶ 13-16.

**B.    THE PROPOSAL WAS NEGOTIATED AT ARM'S LENGTH**

The proposed Settlement arises after years of contentious litigation—and while a decision on class certification is pending—following completion of pre-certification discovery and after a series of informed and non-collusive negotiations facilitated by a respected third-party mediator (Steve Pearl) and Hon. Judge Butcher. *See* Fed. R. Civ. P. 23(e) (2) (B); *see also In re NVIDIA GPU Litig.*, 539 F. App'x 822, 825 (9th Cir. 2013). The instant settlement is the result of the Parties' accepting a "mediator's" proposal by Hon. Judge Butcher after the conclusion of the Parties second Mandatory Settlement Conference.

**C.    THE RELIEF PROVIDED FOR THE CLASS IS ADEQUATE**

The relief provided for the class is adequate, taking into account:

1.    The costs, risks, and delay of trial and appeal;

2.    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

3.    The terms of any proposed award of attorney's fees, including timing of payment; and

4.    any agreement required to be identified under Rule 23(e) (3)

*See* Fed. R. Civ. P. 23(e)(2)(C).

### 1. **The Relief Is Adequate, Given the Costs, Risks, and Delay of Trial and Appeal**

As discussed in Plaintiff's Class Certification filings, the claims in this action all arise from the unpaid time spent by nonexempt employees 1) subject to Defendant's on-site rules and regulations prior to reaching their workstations; 2) donning and doffing work equipment before clocking in, during meal breaks, and after clocking out; and 3) time spent undergoing pre-shift Covid-19 screenings. Each of these activities involved relatively small amounts of time which would most likely be cost-prohibitive to litigate on an individual basis. This meant that the risk of losing certification, or decertification, was much greater than that of a typical case, and that if Plaintiff did not prevail in certifying the class it is highly unlikely that *any* class members would choose to step forward to seek recovery for their own individual claims.

Plaintiff believes the claims were strong on the merits in terms of whether such unpaid time was compensable. However, as with any litigation there are innumerable risks for both parties.  For Plaintiffs, the putative class and aggrieved employees, the risks of continuing litigation include, but are not limited to, the following: 1) the risk that this Court would deny Plaintiff's pending class certification motion; 2) the risk that, even if certification were granted, Defendant would prevail in a later decertification or summary judgement attempt; 3) the risk that the jury would find that Defendant did not have actual or constructive knowledge that class members were spending unpaid time on the tasks alleged; 4) the risk that the jury would believe that Defendant's experts are more credible than Plaintiff's experts as to the frequency and amount of time Plaintiff and the Class spent on the unpaid tasks alleged; 5) the risk that the jury would find that Defendant's conduct was not willful so as to warrant an award of Labor Code § 226 penalties and/or liquidated damages; 6) the evidence presented was not sufficient to prove the aggregate class damages; and 7) the risk that any ultimate award of damages, or other significant ruling in Plaintiff's favor, would be overturned post-trial on appeal.

As discussed herein, Plaintiffs received substantial records, data, and testimony

from Defendant which were used to evaluate Defendant's potential exposure should Plaintiffs prevail on said claims at trial. Based upon Defendant's time and pay data, Plaintiff calculated the potential exposure for the off-the-clock work alleged to range from a mere $576,000 to approximately $2,897,000 with the lower end of the range utilizing an average 4 minutes of off-the-clock work per shift and the upper end of the range utilizing an average of 20 minutes of off-the-clock work per shift. Assuming Plaintiff could prove at least a 25% violation rate at trial, Plaintiff calculated Defendant's meal period penalty exposure to equal approximately $9,967,000. Plaintiff did not seek class certification of the claim for alleged rest period violations, and a nominal exposure value of $100,000 was assigned given perceived difficulties in obtaining any recovery on this claim. Potential exposure for wage statement violations was calculated to equal approximately $3,782,000.

Accordingly, Plaintiff estimates Defendant's total exposure was approximately $16,746,000, before even taking into consideration the risks of the case - including Plaintiff's likelihood of prevailing on his motion for class certification, along with the general risks of proceeding with trial, and possible appellate review. If one then factors in these risks the exposure could, and should, easily be reduced by approximately 50% of the gross number, yielding a more realistic assessment of about $8,373,000 net exposure. Of that sum, the Settlement, in the amount of 4MM, results in a payment of about 47% of the net exposure, which is extremely strong.

## 2. The Proposed Method of Distributing relief to the Class is Effective.

The settlement provides that class members will be mailed checks directly and will not need to submit a claim form. And for class members who do not cash their checks, the money will be sent to the State of California Unclaimed Property Fund to be held in the class member's name. The settlement distribution formula bases each class member's individual settlement allocation upon the number of workweeks that they performed work during the class period.

### 3.  <u>The Proposed Award of Attorney Fees is Fair.</u>

The Ninth Circuit "benchmark" for fees is 25% of the fund, but courts may award a higher percentage when merited. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048 (9th Cir. 2002).  In appropriate cases, state and federal courts applying the percentage-of-recovery method frequently award 33- 1/3% of the common fund. *See, e.g., Chavez v. Netflix, Inc.,* 162 Cal. App. 4th 43, 66 n.11 (2008) (empirical studies show that California fee awards generally average around one-third of the recovery).

Courts regularly apply a multiplier to the base lodestar to reflect the risks involved, the complexity of the litigation, the length of the case, and other relevant factors. *See Vizcaino*, 290 F.3d at 1051 (courts "routinely enhance[] the lodestar to reflect the risk of non-payment in common fund cases".)

Here, the Settlement Agreement provides that Plaintiffs' counsel may apply to the Court for an award of fees in the amount of one-third (33.33%) of the Settlement amount, as well as for reimbursement of Court approved costs and expenses.  This percentage award is commensurate with (1) the risk Class Counsel took in commencing this action, (2) the time, effort and expense dedicated to the case, (3) the skill and determination they have shown, (4) the results they have achieved throughout the litigation, (5) the value of the settlement they have achieved for class members, and (6) the other cases counsel have turned down in order to devote their time and efforts to this matter.

California public policy encourages attorneys to take on the enormous risks of time and money necessary to vindicate the public interest, including specifically the policy of encouraging enforcement of our wage and hour laws.  To fulfill this policy, California law provides that attorney fee awards should be equivalent to fees paid in the legal marketplace to compensate for the result achieved and risk incurred.  See, *Lealao v. Beneficial Cal., Inc.* (2000) 82 Cal.App.4th 19.

When filed, this case presented the very real risk that it either would not be certified as a class action, or that the theories of liability as against the Defendants would

not be successful. Counsel knew that obtaining a remedy would be challenging throughout the litigation. Class counsel faced risk and difficulty on several levels. It was clear from the outset that this case would be contested and that significant attorney and paralegal resources would be needed to litigate the case properly. It was likewise clear that the Defendants would offer the most vigorous defense available.

As in many cases of this type, Class Counsel seek a fee award for their successful prosecution and resolution of this action, calculated as a percentage of the total value of benefits afforded the Class Members by the Settlement. *Serrano v. Priest* 20 Cal. 3d 25, 34 (1977) (Serrano III); *Boeing Co. v. Van Gernert*, 444 U.S. 472, 478 (1980); see also *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

The governing principles, as well as a survey of attorneys' fees jurisprudence (both in California and throughout the country), are set out in *Lealao v. Beneficial California, Inc.,* 82 Cal. App. 4th 19, 22 (2000). Trial courts have "wide latitude" in assessing the value of attorneys' fees and their decisions will "not be disturbed on appeal absent a manifest abuse of discretion.". (*Id.* at 41.) It is well-recognized that fee awards that are too small will "chill the private enforcement essential to the vindication of many legal rights and obstruct the representative actions that often relieve the courts of the need to separately adjudicate numerous claims." *Id.* at 53. Finally, evaluating attorneys' fees in the context of settlement approval should not turn into "a second major litigation." *Id.* at 31 citing *Hensley v. Eckerhart* 461 U.S. 424, 437 (1983).

Here, the fee amount sought by Plaintiff's attorneys is fair and reasonable for purposes of this preliminary approval. See *Fernandez v. Victoria Secret Stores, LLC* 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (citing an academic study collecting contingency fee agreements and finding that a fee award constituting 35% of the fund is reasonable on that basis); *In re M.D.C. Holdings Securities Litigation* 1990 WL 454747, at *22 (S.D. Cal. 1990) ("in private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.")); *Dugan v. Lloyds TSB Bank, PLC*, No. C 12-02537 WHA, 2014 WL 1647652, at *3 (N.D. Cal. Apr. 24,

2014) ("Most fee awards range from three percent to forty percent of a common monetary fund."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.4 (9th Cir.2002); *Ruiz v. XPO Last Mile, Inc.*, No. 5-CV-2125 JLS (KSC), 2017 WL 6513962, at *7 (S.D. Cal. Dec. 20, 2017)("The Court concludes that Class Counsel's requested attorney fees of [...] 35% of the Settlement Fund, are reasonable")

Further argument and evidence supporting the requested award will be presented within Plaintiff's forthcoming motion for attorney's fees. However, for purposes of preliminary approval the contemplated fee request falls well within the range which may by permissibly granted by this Court, and the ultimate award of fees remains within this Court's sound discretion thereby supporting preliminary approval.

**4.  Any Agreement Required to be Identified Under Rule 23(e) (3)**

Other than the Settlement Agreement, there are no such agreements.

**D.    THE PROPOSED SERVICE AWARD IS FAIR.**

Pursuant to the settlement agreement, Plaintiff William Wightman may seek an award of $37,500 for his dedication, service, and the risks he exposed himself to when initiating and maintaining this action over the past several years. Absent the extensive time and effort he contributed to this case, the $4,000,000.00 settlement would not exist. Kennedy Decl. ¶ 13-16. At all times Mr. Wightman has protected the interests of the class and chose to pursue class certification rather than seeking to settle his individual claims much earlier in the case.

Mr. Wightman attended deposition in this matter and personally attended both mandatory settlement conferences. *Id*. Mr. Wightman provided substantial assistance to Counsel in developing the claims in this case and provided relevant documents and explanations of Defendant's policies and practices. *Id.* As will be discussed in further detail  as part of Plaintiff's forthcoming Motion for Attorney Fees, Costs, and Enhancement Awards – Mr. Wightman was a particularly active and involved representative who regularly checked in with Counsel and engaged in lengthy discussions regarding the case, documents that he had reviewed, and Counsel's

1  litigation strategies.

2      Plaintiff understands that the service award sought here is higher than the average

3  award; however, Counsel believes that the requested amount is fully justified in this

4  case as will be further elaborated upon in Plaintiff's Motion for Attorney Fees, Costs,

5  and Enhancement Award to be filed in advance of final approval. Furthermore, the

6  settlement is not contingent upon the requested service award being granted in full and

7  the maximum potential award falls well within the range of reasonableness for this

8  Court to preliminarily approve. See, e.g., *Barcia v. Contain-A-Way, Inc*., No. 07CV938-

9  IEG-JMA, 2009 WL 587844, at *7 (S.D. Cal. Mar. 6, 2009) (collecting cases awarding

10  service fees between $25,000 and $55,000); *Fulford v. Logitech, Inc.*, No. 08–CV–

11  2041–MMC, 2010 U.S.Dist. LEXIS 144437, at *6 & n.1 (N.D. Cal. Mar. 5, 2010)

12  (collecting cases awarding service fees between $5,000 and $40,000); *Garner v. State*

13  *Farm Mut. Auto. Ins. Co.*, No. 08–CV–1365–CW(EMCx), 2010 U.S. Dist. LEXIS

14  49477, at *47 & n. 8 (N.D. Cal. Apr. 22, 2010) (collecting cases awarding service

15  awards ranging from $20,000 to $50,000).

16  ### E.   CLASS MEMBERS WILL BE TREATED EQUITABLY
17  RELATIVE TO ONE ANOTHER

18      Rule 23 (e) (2)(D) requires a court to determine whether the "proposal treats class

19  members equitably relative to each other." For this factor, "[m]atters of concern could

20  include whether the apportionment of relief among class members takes appropriate

21  account of differences among their claims, and whether the scope of the release may

22  affect class members in different ways that bear on the apportionment of relief." Fed.

23  R. Civ. P. 23(e) (2), 2018 Advisory Committee Notes.

24      Here, the amount of money each Class Member receives is directly proportional

25  to the number of applicable workweeks that Class member worked during the Class

26  Period. SA ¶¶ 48(a)(i).

27  / / /

28  / / /

**F.    SETTLEMENT ADMINISTRATION**

After obtaining settlement administration quotes from three potential settlement administrators, the Parties were able to agree upon Phoenix Class Action Administration Solutions as the settlement administrator.

**G.    NOTICE.**

The Notice of Settlement of PAGA and Class Action suit is attached to the Settlement Agreement as Exhibit 1. See SA, Exhibit 1 ("Notice"). The Notice provides the relevant information regarding this litigation including the major terms of the proposed settlement and release. Additionally contact information for Class Counsel is provided should any class member have further questions.

**H.    OPT OUTS.**

The Notice advises class members that they can opt out by sending a written request to the administrator. It also advises them of the consequences of opting out, and sets forth information required for identification.

**I.    OBJECTIONS.**

The Notice advises class members of the deadline to submit objections and includes a template objection form. It also advises the class members that they may object in-person at the final approval hearing.

**J.    TIMELINE.**

A proposed timeline for the Settlement is included in the Proposed Order filed concurrently herewith.

**K.    CLASS ACTION FAIRNESS ACT (CAFA) AND SIMILAR REQUIREMENTS.**

Defendant will comply with CAFA—under the parties' Agreement, the Settlement Administrator shall submit the required notice within 10 days of filing of this motion. On the date of filing this motion, Class Counsel will upload a copy of this motion and exhibits including the Settlement Agreement to the LWDA website.

/ / /

## VI.    THE PAGA ALLOCATION IS PROPER

It is well-settled that a PAGA penalty award should be proportionate to the underlying damages recovered. *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1214 (2008)." Here, the Agreement provides for a PAGA allocation of $150,000, of which 75% will be paid to the LWDA out of the gross settlement amount, and the remaining 25% will be distributed to PAGA Group Members. This constitutes 3.75% of the gross settlement amount.

Courts have routinely approved similar PAGA allocations. *Viceral v. Mistras Group, Inc.*, 2016 WL5907869 (N.D. Cal. 2016) (0.15%); *Saechao v. Landrys, Inc.*, 2016 WL 3227180, *3 (N.D. Cal. June 11, 2016) (approving settlement of PAGA claim for $12,000, or 1.3% of the estimated total PAGA value of $921,000, according to the plaintiff's expert). This is because trial courts have broad discretion to reduce the amount of PAGA penalties if the award would be: "unjust, arbitrary and oppressive or confiscatory." Cal. Lab. Code § 2699(e)(2).

## VII.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

Parties seeking class certification for settlement purposes must still generally satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Here, Plaintiff has previously submitted a detailed motion outlining why class certification is appropriate in this action. See Dkt. 41. Plaintiff reincorporates the same arguments and evidence herein by reference; however, as a brief summary: The numerosity requirement is easily met here where more than two thousand class members have been identified; Plaintiff has protected the interests of the class and engaged highly experienced and competent counsel, thus meeting the adequacy of representation requirement; Plaintiff falls within the class definition, experienced the same wrongful conduct alleged, and maintains the same claims as the class, thus meeting the typicality requirement; each of the claims alleged stem from the same unpaid work activities which occurred as a result of Defendant's admitted policies and

practices and liability may be found on a class wide basis, thus meeting the commonality and predominance requirements; the class action device is superior method of adjudication here where there are numerous class members who would otherwise be unlikely to pursue small individual claims.

## VIII. CONCLUSION

For the reasons set forth herein, the proposed Settlement is an excellent one, arrived at after years of hard work and litigation. Preliminary approval should be granted.

DATED:  January 2, 2024                    **MARLIN & SALTZMAN, LLP**

By:   *s/ Cody R. Kennedy*
        Alan S. Lazar
        Cody R. Kennedy
        Attorneys for Plaintiffs