**MARLIN & SALTZMAN, LLP**
Alan S. Lazar, Esq. (SBN 125820)
Cody R. Kennedy, Esq. (SBN 296061)
29800 Agoura Road, Suite 210
Agoura Hills, California  91301
Telephone:  (818) 991-8080
Facsimile:  (818) 991-8081
alazar@marlinsaltzman.com
ckennedy@marlinsaltzman.com

**D.LAW, INC.**
Emil Davtyan, Esq. (SBN 299363)
400 N. Brand Blvd, 7th Floor
Glendale, California  91203
Telephone:  (818) 875-2008
Facsimile:  (818) 722-3974
emil@d.law.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM WIGHTMAN, ON BEHALF OF HIMSELF AND FOR ALL OTHER CURRENT AND FORMER AGGRIEVED EMPLOYEES,<br><br>                    Plaintiffs,<br><br>v.<br><br>COBHAM ADVANCED ELECTRONIC SOLUTIONS INC.; AND DOES 1 - 100, INCLUSIVE,<br><br>                    Defendants. | CASE NO. 3:21-cv-01784-TWR-DEB<br>(Assigned: Judge Todd W. Robinson)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>DATE:      August 15, 2024<br>TIME:      1:30 p.m.<br>CTRM:     14A<br><br>*(Filed concurrently with Declaration of Lluvia Islas; Proposed Order)*<br><br>Complaint Filed:        September 3, 2021 |

**TO THE HONORABLE COURT, ALL PARTIES & THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 15, 2024, at 1:30 p.m., or as soon thereafter as the matter can be heard in Courtroom No. 14A, in the U.S. District Court located at 333 W. Broadway, San Diego, California, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff will and hereby, and does, move for an order granting final approval of the class action and PAGA settlement reached with Defendant Cobham Advanced Electronic Solutions Inc. ("Defendant"). Defendant does not oppose this motion.

This Motion is brought concurrently with Plaintiff's Motion for Attorneys' Fees, Costs, and Enhancement Award.

This motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, and all documents and arguments in support thereof.

Plaintiffs request the following relief:

1. A determination that the proposed Settlement is fair, adequate, and reasonable;

2. A determination affirming this Court's prior order preliminarily certifying the case as a class action for settlement purposes, and granting final certification.

3. A determination granting final approval of the proposed settlement.

4. An award of attorney fees in the amount of $ 1,333,333.33;

5. An award of litigation expenses in the amount of $79,689.32;

6. A service award of $37,500 to Plaintiff William Wightman;

7. Any other relief that the Court deems just and equitable under the circumstances.

/ / /

/ / /

/ / /

DATED:  July 18, 2024          **MARLIN & SALTZMAN**


By  *s/ Cody R. Kennedy*
      Alan S. Lazar
      Cody R. Kennedy
      Attorneys for Plaintiffs

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................ 1

II.  THE CLASS NOTICE PROCESS WAS SUCCESSFULLY
     IMPLEMENTED .............................................................................. 3

     A.   DISSEMINATION OF CLASS NOTICE.......................................... 3

     B.   THE FINAL NUMBER OF OBJECTIONS AND EXCLUSIONS IS
          EXTREMELY LOW ................................................................... 3

     C.   CHALLENGES TO EMPLOYMENT WORKWEEK CALCULATIONS ..... 4

III. THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL
     APPROVAL ..................................................................................... 4

     A.   TERMS OF THE SETTLEMENT ................................................. 4

     B.   STANDARD OF REVIEW........................................................... 5

     C.   CLASS NOTICE COMPORTS WITH RULE 23 AND DUE PROCESS ..... 6

     D.   THE SETTLEMENT IS THE RESULT OF GOOD-FAITH, ARM'S-
          LENGTH NEGOTIATIONS ......................................................... 7

     E.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE......... 7

          1.   The Strength of Plaintiff's Case Supports Final Approval
               ................................................................................. 8

               a)   The Class Claims and Underlying Theories of Liability ...... 8

               b)   The Settlement Constitutes A Significant Percentage of
                    Recovery Even if No Risk Factor Discounts Are Applied . 10

               c)   The Application of a Risk Factor Reduction Only Further
                    Strengthens Plaintiff's Position That the Settlement Is Fair,
                    Adequate, and Reasonable. ................................................. 12

               d)   The Instant Settlement Now Exceeds 100% of the Estimated
                    Percentage of Recovery At Trial. ....................................... 15

          2.   The Risk, Expense, Complexity, and Likely Duration of
               Further Litigation Weigh in Favor of Settlement
               Approval ...................................................................... 15

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

3.    The Risk of Obtaining and Maintaining Class Action Status Through Trial Supports Final Approval ............................ 16

4.    The Amount Offered in Settlement Supports Final Approval ....................................................................... 16

5.    The Extent of Discovery Completed and the Stage of the Proceedings Supports Final Approval ............................................ 17

6.    The Views of Experienced Counsel Support Final Approval ....................................................................... 18

7.    The Government Participant Factor Supports Final Approval ....................................................................... 19

8.    The Reaction of the Settlement Class Supports Final Approval ....................................................................... 19

IV.    CONCLUSION ................................................................. 19

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

1

## **TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Aguilar v. Wawona Frozen Foods*,
4
    2017 WL 2214936 (E.D. Cal. 2017) ................................................................. 14

5

*Almanzar v. Home Depot U.S.A., Inc.*,
6
    2022 WL 2817435 (E.D. Cal. 2022) ................................................................. 12

7

*Amaro v. Gerawan Farming Inc.*,
    2020 WL 6043936 (E.D. Cal. 2020) ................................................................. 12
8

*Bellinghausen v. Tractor Supply Co.*,
9
    306 F.R.D. 245 (N.D. Cal. 2015) ..................................................................... 12

10

*Benitez v. W. Milling, LLC*,
11
    2020 WL 3412725 (E.D. Cal. 2020) ................................................................. 12

12

*Bravo v. Gale Triangle, Inc.*,
    2017 WL 708766 .............................................................................................. 12
13

*Brown v. CVS Pharmacy, Inc.*,
14
    2017 WL 3494297 (C.D. Cal. 2017) ................................................................. 12

15

*Campbell v. First Inv'rs Corp.*,
16
    2012 WL 5373423 (S.D. Cal. 2012) ................................................................. 16

17

*Carter v. Anderson Merch., LP*,
18
    2010 WL 1946784 (C.D.Cal. 2010) ................................................................. 13

19

*Deaver v. Compass Bank*,
20
    2015 WL 8526982 (N.D. Cal. 2015) ................................................................. 12

21

*Feyko v. AAD Partners LP*,
    2014 WL 12572678 (C.D. Cal. 2014) ................................................................. 7
22

*Freeze v. PVH Corp.*,
23
    2021 WL 2953161 (C.D. Cal. Jan. 7, 2021) ..................................................... 12

24

*Gordillo v. Ford Motor Co.*,
25
    2014 WL 2801243 (E.D. Cal. 2014) ................................................................. 13

26

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ...................................................................... 8, 17
27

*In re Bluetooth Headset Prods. Liab. Litig.*,
28
    654 F.3d at 948 .................................................................................................. 7

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

*In re Celera Corp. Sec. Litig.*,
    2015 WL 1482303 (N.D. Cal. 2015)............................................................ 12

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008).................................................... 17

In *re Portal Software, Inc. Sec. Litig*,
    2007 WL 4171201 (N.D. Cal. 2007)........................................................ 12

*Karam v. Corinthian Colleges Inc.*,
    2017 WL 4070889 (C.D. Cal. 2017) .......................................................... 5

*Kirkorian v. Borelli*,
    695 F. Supp. 446 (N.D. Cal. 1988)........................................................... 18

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ................................................................. 17

*Musgrove v. Jackson Nurse Pros.*, LLC,
    2022 WL 18231364 (C.D. Cal. 2022) ..................................................... 13

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)............................................................. 18

*Officers for Justice v. Civil Svc. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ............................................................ 5, 6, 7

*Pearson v. P.F. Chang's China Bistro, Inc.*,
    2018 WL 2316885 (S.D. Cal. 2018) ........................................................ 13

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006) ..................................................................... 5

*Riker v. Gibbons*,
    2010 WL 4366012 (D. Nev. 2010)........................................................... 13

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ................................................................... 18

*Ross v. Trex Co., Inc.*,
    2013 WL 6622919 (N.D. Cal. 2013)........................................................ 17

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................... 5, 8

*Utility Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) ..................................................................... 5

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

*Utne v. Home Depot U.S.A., Inc.*
   (N.D. Cal. 2018) 2018 WL 1989499 ..................................................... 9

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ............................................................ 5

*Wershba v. Apple Computer, Inc.*,
   91 Cal.App.4th 224 (2001) .............................................................. 16

*Woodard v. Labrada*,
   2019 WL 6998775 (C.D. Cal. 2019) ................................................ 12

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D. Cal. 2011), supplemented, 2011 WL
   1838562 (N.D. Cal 2011) ............................................................... 13

## Rules

Fed. R. Civ. Proc. 23 ........................................................................ 5, 6

Fed. R. Civ. Proc. 23(c)(1)(A) ........................................................ 16

Fed. R. Civ. Proc. 23(c)(1)(C) ........................................................ 16

Fed. R. Civ. Proc. 23(e) .................................................................... 5

Fed. R. Civ. Proc. 23(f) ................................................................... 16

## Other Authorities

4 Newberg on Class Actions, § 13:51 (5th ed.) ................................ 13

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff, William Wightman, individually and on behalf of the conditionally certified settlement class, seeks this Court's final approval of the *non-reversionary* settlement in the total amount of $4,000,000 (four million dollars) ("Settlement"), which this Court preliminarily approved on March 21, 2024. (Dkt. 55). Defendant does not oppose this motion.

As of the date of the filing of this Motion, and after the final date for class members to opt-out or submit an objection, Plaintiff is pleased to inform the Court that:

- Prior to mailing the Notice Packets, the Settlement Administrator conducted a National Change of Address (NCOA) search and updated all applicable addresses of the class members requiring change. (Declaration of Lluvia Islas Regarding Settlement Notice Administration ("Islas Decl."), ¶ 4).

- The Settlement Administrator mailed Notice Packets to the 1891 settlement class members. Out of the total mailed notices, only six (6) remained undeliverable. (*Id.*, ¶¶ 5-7).

- Three objections were received, none of which stated a valid basis for objection. (*Id.*, ¶ 9, Ex. B).

- There were only five (5) opt-outs to the Settlement, representing an impressively high participation rate of 99.74%. (*Id.*, ¶ 8).

In short, the results reveal that the class notice process was extraordinarily successful and that the settlement class members have overwhelmingly endorsed the Settlement.

The Settlement provides that Defendant will pay $4,000,000.00 to settle the claims of the settlement class, defined as:

All individuals who worked for Defendants in California as a non-exempt, hourly paid employee at any time during the period from September 3, 2017 through the date of preliminary approval.

(Dkt 51-1, Ex. A [Settlement Agreement].)

The size of the settlement class is 1,886 people. (Islas Decl. ¶12). The Class Period is from September 3, 2017 through the date the Court granted preliminary approval of the Settlement, which was March 21, 2024. (Dkt 51-1, Ex. A; *see also* Dkt. 55).

Since the settlement is non-reversionary, the entire $4,000,000.00 will be distributed in the manner provided by the settlement agreement and preliminarily approved by the Court. (Dkt 51-1, Ex. A; *see also* Dkt. 55). As stated therein, no claim forms were required of any settlement class member, so if the Court grants final approval of the Settlement, the Settlement Administrator will automatically mail payments to all of the settlement class members. (*See id.*).

An objective evaluation of the Settlement confirms that it is fair, reasonable and adequate. The Parties reached the instant settlement only after several years of litigation, extensive discovery, depositions of numerous corporate witnesses, expert data review, private mediation, and two court-led settlement conferences. Plaintiff's counsel thoroughly investigated and extensively worked up the case, which included seeking class certification, prior to the parties ultimately agreeing to the settlement now before the Court. (Dkt 51-1 at ¶¶ 4-9).

As set forth in detail in Plaintiff's Motion for Preliminary Approval of Class Action and PAGA Settlement ("Motion for Preliminary Approval"), the Settlement provides class members with valuable relief for their claims, particularly when viewed in light of the many difficult and unsettled legal issues presented. As will be discussed further herein, the Settlement eliminated the risks involved in obtaining class certification, and eventually establishing liability in the face of factual circumstances which had yet to be tested and novel legal issues yet to be decided by our higher courts. Plaintiff was all too aware that, a negative determination on one or all of these issues could result in a massive reduction in the amount of damages recoverable, and/or the ability to prevail on the claims alleged.

In sum, the Settlement meets the criteria for final approval, as it easily falls within the range of what courts consider fair, reasonable, and adequate. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

## II.    THE CLASS NOTICE PROCESS WAS SUCCESSFULLY IMPLEMENTED

### A.    Dissemination of Class Notice

The Court appointed Phoenix Class Action Administration Solutions, Inc. ("Phoenix"), as the Settlement Administrator, and Phoenix has provided the Court with a full report of its activities. (*See* Islas Decl., *generally*). The Settlement required mailing the Class Notice to the settlement class members, and providing information on how to opt out of or object to the Settlement. (*Id.*, at Ex. A). The Notice dissemination was highly successful. The Settlement Administrator complied with this Court's orders concerning dissemination of class notice, resulting in only five (5) requests for exclusion, and thus a 99.74% participation rate by the Class in this settlement. (*Id.*, ¶ 8).

Additionally, Plaintiff provided notice of the proposed settlement to the California Department of Labor and Workforce Development Agency ("LWDA") pursuant to Labor Code § 2699(l) on January 3, 2024. The LWDA has not objected to, nor weighed in on, this Settlement.

### B.    The Final Number of Objections and Exclusions is Extremely Low

As discussed *supra*, we are pleased to report that out of the 1891 identified class members, only six (6) notices were deemed non-deliverable, only five (5) class members have chosen to opt-out of the settlement, and only three (3) objections –none of which raised substantive issues with the settlement- were received.  (Islas Dec ¶¶ 3-10). These findings, after the conclusion of the Notice period, represent a 99.79% participation rate by the settlement class and speaks very favorably to the response of the settlement class to the Settlement.

/ / /

### C. Challenges to Employment Workweek Calculations

Only a single dispute was received related to the assigned number of workweeks listed on a settlement class member's individually-tailored notice, and the estimated settlement payments set forth thereon. (Islas Decl., ¶ 10). Again, this is telling of the positive reception of the settlement, as it is not at all uncommon for there to be at least a small percentage of such disputes. Very likely, the lack of any disputes is due to the accuracy of Defendant's records and the corresponding substantial payments being made to so many class members.

## III. THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL

### A. Terms of the Settlement

Plaintiff detailed the terms of the Settlement in his Motion for Preliminary Approval (Dkt. 51 at pp. 11-14). In order to avoid undue duplication, Plaintiff will not repeat the terms in detail; however, the critical terms are as follows: (a) $4,000,000.00 to be paid for the benefit of the settlement class; (b) the Settlement is totally non-reversionary; (c) no claims forms are required of the settlement class members; (d) the attorneys' fees, costs, administration expenses, and enhancement award to Plaintiff will all be paid by Defendant from the Gross Settlement Amount; and (e) all but six (6) class notice mailings were successfully delivered by mail. (*Id.*; *see also* Islas Decl., ¶ 7).

The gross recovery per settlement class member is dependent on the length of time they worked for Defendant. The average net settlement payment (after deducting requested fees, costs, and incentive awards) is $1,262.81 and the highest net settlement payment is estimated to be $2,565.72. (Islas Decl., ¶ 12).

The Settlement also provides that a total of $150,000.00 of the gross settlement fund will be paid to resolve the Private Attorneys General Act ("PAGA") claim asserted in the action, to be divided so that $112,500.00 (75%) will be paid to the LWDA and $37,500.00 (25%) will be paid to the settlement class members as part of the Net Settlement Amount.

Finally, the Settlement release is narrowly tailored. Specifically, it provides that the settlement class members release only those claims asserted or that could have been asserted in the Complaint based on the facts, theories, and/or statutory or other violations asserted in the Litigation. (Dkt. 51 at pp. 11-13; Dkt 51-1, Ex. 1). As courts in this District have found, releases are not overly broad where, as here, they only release claims based on claims asserted or those with the identical factual predicate as the underlying claims. (*Karam v. Corinthian Colleges Inc.*, 2017 WL 4070889, at *5 (C.D. Cal. 2017); *accord Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006)).

## B.    Standard of Review

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." (*Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)). Class actions readily lend themselves to compromise because of the difficulties of proof, the risks of litigation, and the extended time to resolution. "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." (*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989)).

In deciding whether to approve a settlement under Rule 23(e), the Court must find that the proposed settlement is "fair, adequate and reasonable." This Court has already preliminarily found the requirements of Fed. R. Civ. Proc. 23 are satisfied. (Dkt. 77-80). The relevant factors demonstrate that the Settlement should now be finally approved, as it remains fair, reasonable, and adequate. (*See id.*).

The district court exercises its sound discretion in approving a settlement. (*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)). In exercising its discretion, however, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product

of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." (*Officers for Justice*, 688 F.2d at 625). The Ninth Circuit has clearly defined the limits of the Court's inquiry:

> "[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."

(*Id*).

## C.    Class Notice Comports with Rule 23 and Due Process

Rule 23 and due process require that the settlement class receive the best notice practicable under the circumstances, which was provided here. Indeed, in its Preliminary Approval Order, this Court approved the class notice as to form and content, and further found that the proposed Notice of Settlement and notice plan meets the requirements of due process and is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto. (Dkt. 55). In fact, as reflected in the Islas Declaration, the notice mailing here resulted in only six (6) undeliverable notices (or, 0.3% of the total Class).

The Parties and the Settlement Administrator followed the schedule for the settlement process approved by the Court—including dissemination of the class notice. (*See* Islas Decl., ¶¶ 3-10; *see also* Dkt. 55). Defendant timely provided the settlement administrator with the Class List. (Islas Decl., ¶ 3). The Settlement Administrator mailed the Settlement Notice Packets to the updated list of 1,891 individuals on the Class List on May 09, 2024. (*Id.*, ¶ 5).

The notice process used in this case apprised settlement class members of the Settlement and gave them the chance to opt-out or object. Given the positive results, the class notice process employed here far exceeded the requirements of Rule 23, and

thus satisfies due process.

### D.    The Settlement Is the Result of Good-Faith, Arm's-Length Negotiations

The Parties reached this Agreement, only after a private mediation before esteemed mediator Steve Pearl, and two court-led settlement conferences before Magistrate Judge Butcher. Further, the decision to settle was made only after full investigation, discovery, motion practice, and ongoing certification preparation. (Dkt 51-1, ¶¶ 4-9; Dkt 57-1, ¶¶ 6-11). This process reflects the zealous efforts of Class Counsel to champion the interests of the settlement class. The fact that the settlement efforts were overseen by Steve Pearl, a highly regarded private class action mediator, and Magistrate Judge Butcher in court-appointed role overseeing the settlement conferences, further demonstrates the non-collusive nature of the Settlement. (*See id.*, at ¶¶ 10 & 18; *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 948; *Feyko v. AAD Partners LP*, 2014 WL 12572678, at *7 (C.D. Cal. 2014) ("Settlements reached with the help of a mediator are likely non-collusive.")).

Moreover, the Settlement bears no signs of collusion or conflicts of interest. As discussed *supra*, it followed extensive arms-length negotiations. Notice was approved by this Court and has been provided to the settlement class. Settlement class members will receive significant monetary awards from a non-reversionary common fund Settlement, and they will receive this money without having to submit a claim form. Further, the settlement itself is not contingent upon the award of any specific attorney fee or enhancement award, both of which remain within the sound discretion of this Court.

In sum, the parties entered into the Settlement in good faith, only after arm's-length negotiations without collusion, warranting a presumption in favor of approval. (*Officers for Justice*, 688 F.2d at 625).

### E.    The Settlement Is Fair, Reasonable, and Adequate

In evaluating the fairness, reasonableness, and adequacy of a class settlement,

courts consider and balance a number of factors, including: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." (*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citing *Torrisi*, 8 F.3d at 1375)). Under each of these factors, this Settlement easily warrants this Court's final approval.

**1.    The Strength of Plaintiff's Case Supports Final Approval**

**a)    The Class Claims and Underlying Theories of Liability**

As stated in Plaintiff's Motion for Preliminary Approval, there can be no debate that the claims presented in this case are complex and involve previously unsettled legal issues.

Each of the claims arise (either directly or derivatively) from the three types of allegedly uncompensated off-the-clock work identified in Plaintiff's Class Certification Motion. (Dkt 41, at pp. 16-32). The first and most prevalent type of off the clock work task was "walk-time" spent within Defendants' facilities, subjected to Defendants' onsite security procedures. Specifically, this was the time spent by employees such as Mr. Wightman walking from the entrance of the worksite to their clock-in station. *Id.* The underlying theory was that once an employee entered the worksite, they were subjected to Defendant's onsite rules and security procedures applicable to all employees - such as requirements to display their identification badges; requirement to adhere to all security rules and procedures; prohibitions against certain cell phone usage; and adherence to Cobham's code of professional conduct - and thus were subject to a sufficient degree of control for such time to be compensable. *Id.* This theory of liability was relatively novel, having only been addressed by district courts in the class certification context without the benefit of any binding decisions determining whether liability could be satisfied under such circumstances.  (See e.g. *Utne v. Home Depot*

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

*U.S.A., Inc.* (N.D. Cal., Mar. 30, 2018, No. 16-CV-01854-RS) 2018 WL 1989499, at *3).

Notably, this theory of liability was also virtually identical to that eventually taken up and addressed by the Cal. Supreme Court in *Huerta v. CSI Elec. Contractors*, 15 Cal. 5th 908, 930 (2024), which was cited in Plaintiff's Class Certification Motion and was pending when settlement was reached in this action. In *Huerta*, the plaintiff had argued that after entering the employer's parking facility and at all times thereafter while driving to the worksite entrance, he was subjected to similar generally applicable rules such as "safety and personal protective equipment rules; anti-discrimination and antiharassment rules; environmental rules; alcohol and drug policies; rules related to being subject to searches for alcohol, drugs, and other things; and rules prohibiting smoking, practical jokes, horseplay, gambling, photography, and playing loud music." *Id.* at 931-32. Unfortunately, the Cal. Supreme Court determined that liability could not be established by the employer requirement to adhere to these types of rules alone; meaning that, had a settlement not been reached in this action, Plaintiff would have been unable to recover *anything* under the theory which accounted for the vast majority of alleged violations.

The second type of off the clock work task was uncaptured time spent "donning and doffing" certain equipment in Defendant's frock room areas. Notably, this applied only to certain positions, and accounted for only 16% of the potential violations identified by Plaintiff's expert. (Dkt 41-7 at ¶ 20 [Chasworth Decl.], identifying "13,946 badge swipe transactions which have been identified outside of work time and are associated with 'Smock Room' locations") Additionally, this claim was complicated by the fact that Defendant contended that it permitted manual adjustment of punches allowing for such work to be completed, and that it expected that a "few minutes" would be spent completing such tasks. (Dkt. 41, at pp. 24-26).

The third type of off the clock work task alleged was unpaid pre-shift Covid 19, screening which took place only from March 2020 through June of 2021. This claim

9

was applicable only to employees such as Plaintiff who worked at Defendant's San Diego facility, because Defendant's records and deposition testimony indicated that the San Jose facility actually captured and compensated for such time. (Dkt 41, at p. 30).

        **b)**      **The Settlement Constitutes A Significant Percentage of Recovery Even if No Risk Factor Discounts Are Applied**

As stated in Plaintiff's Preliminary Approval Motion, it was initially estimated that Defendants' total exposure before risk factors were applied was approximately $16,746,000. Broken down by cause of action, the class-wide unpaid wages claim was estimated to range from $576,000 to approximately $2,897,000. This estimate included all three sources of off-the-clock work (i.e. unpaid walk time, donning/doffing time, and unpaid covid screening) and utilized the total shifts and workweeks for all class members during the class period. The low end of the range was based upon an estimate that Plaintiff would prevail in proving that four (4) minutes of off-the-clock work occurred per workday for each employee. The high end was a liberal estimate assuming that twenty (20) minutes of unpaid time could be recovered at trial.

This range was calculated to reflect the discovery and testimony obtained by Plaintiff's Counsel throughout the action. As part of Plaintiff's Class Certification Motion, Plaintiff's expert opined that the median amount of uncompensated walk-time evidenced by Defendants' badge swipe records was 3.66 Minutes. (Dkt 41-7 [Chasworth Dec.], ¶ 20). Based upon an expert analysis of those same records, the median uncompensated donning and doffing time, spent specifically within Defendant's frock room locations, appeared to be 2.8 minutes. *Id.* Plaintiff testified that the third source of uncompensated time, unpaid Covid screening, took around five (5) minutes on average, not including added walk-time to his work station; while Defendant's witnesses testified that Covid screening took approximately two (2) minutes on average, with an added walk time of up to ten (10) minutes depending on which building the worker was assigned to. (Dkt 41, at p. 30.) It should be noted that this recovery range was not reduced for the facts that 1) the added Covid Screening

procedures applied to only one location and were only in place from March of 2020 to June of 2021, and 2) the donning and doffing claims applied only to a small percentage of Defendants' workforce (approximately 16%). Ultimately, in an abundance of caution, Plaintiff used the higher end of the 4-20 minute range for purposes of calculating percentage of recovery represented by the settlement; and included these factors instead as part of the proposed risk reduction percentage.

The meal period premium claims stemmed from the unpaid time discussed *supra*. For purposes of calculating maximum potential recovery of $9,967,000 - Plaintiff utilized an estimated 25% violation rate could be proven after excluding shifts that are not eligible for meal periods, and when taking into consideration that several of the sources of unpaid time cited by Plaintiff (i.e. unpaid Covid checks, unpaid walk-time) occurred pre/post shift having little to no impact on meal periods and thus would be unlikely to result in a recoverable violation.

A nominal value of $100,000 was included for the rest period claim, because class certification was not sought on that claim, and a class recovery would not have been obtained at trial. Potential recovery for the wage statement claims was calculated to equal $3,782,000, utilizing a 100% violation rate. It should be noted that the estimated recovery for the wage statement claim was not reduced based upon the pendency of *Naranjo v. Spectrum Sec. Servs.*, Inc., 15 Cal. 5th 1056, 547 P.3d 980 (2024), which was instead factored into Counsel's proposed risk reduction percentage.

In sum, for the reasons stated above, Plaintiff initially estimated Defendants' total exposure at trial to equal approximately $16,746,000 *without* applying any risk factor discounts whatsoever. Accordingly, the $4,000,000 settlement obtained here constitutes an approximate 24% recovery *before taking into consideration even a single risk of the case.* This is a strong percentage of recovery regularly found reasonable by our courts, including at least one involving a strikingly similar settlement:

> As the court observed in its order granting preliminary approval, the estimated net settlement fund of $3,370,158.80 represents approximately 20 percent of the maximum possible recovery as calculated by their expert to be approximately

$16,458,758. […] However, as the parties note, this approximated value does not account for any discounts or give any weight to defendants' defenses. […] The court has previously assessed the fairness and adequacy of the settlement amount, in light of the circumstances of this case, and found that a 20 percent recovery rate is within the range of the percentage recoveries that California district courts have found to be reasonable.

*Amaro v. Gerawan Farming Inc.*, No. 114CV00147DADSAB, 2020 WL 6043936, at *6 (E.D. Cal. Oct. 13, 2020); See also *Woodard v. Labrada*, No. EDCV1600189JGBSPX, 2019 WL 6998775, at *6 (C.D. Cal. Oct. 7, 2019) ("**A recovery of approximately 22% of the damages the Settlement Class could have recovered is consistent with and exceeds amounts routinely found to be fair and reasonable**", emphasis added.); *Bravo v. Gale Triangle, Inc.*, No. CV 16–03347 BRO (GJSx), 2017 WL 708766, at *10 (settlement for 14 percent of total possible recovery found reasonable); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (11 percent to 27 percent); I*n re Portal Software, Inc. Sec. Litig*, No. C–03–5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (25%); *Freeze v. PVH Corp.*, No. CV 19-1694 PSG (EX), 2021 WL 2953161, at *5 (C.D. Cal. Jan. 7, 2021) (24%); *Brown v. CVS Pharmacy, Inc.*, No. CV 15-7631 PSG (PJWx), 2017 WL 3494297, at *4 (C.D. Cal. Apr. 24, 2017) (27%); *Benitez v. W. Milling, LLC*, 2020 WL 3412725, at *6 (E.D. Cal. June 22, 2020) (13%); *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *6 (N.D. Cal. Mar. 31, 2015) (13%); *Deaver v. Compass Bank*, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (10.7%); *Almanzar v. Home Depot U.S.A., Inc*., No. 2:20-CV-0699-KJN, 2022 WL 2817435, at *12 (E.D. Cal. July 19, 2022)("10% of the verdict value of […]is generally considered the low end of reasonable recovery.")

**c)    The Application of a Risk Factor Reduction Only Further Strengthens Plaintiff's Position That the Settlement Is Fair, Adequate, and Reasonable.**

Although the total estimated recovery discussed *supra* already supports approval when weighed against the settlement, it is also well established that this amount should

not be looked at in a vacuum; rather, it must be reduced to appropriately reflect the risks of bringing the case to trial. See *Musgrove v. Jackson Nurse Pros.*, LLC, No. CV 17-6565 FMO (SSX), 2022 WL 18231364, at *5 (C.D. Cal. June 24, 2022)("The primary way a court determines whether the settlement's value is sufficient is by (1) making a rough estimate of what the class would have received had it prevailed at trial (or at other endpoints) and then (2) discounting that value by the risks that the class would face in securing that outcome."), citing 4 Newberg on Class Actions, § 13:51 (5th ed.). When risk factor discounts are applied, the total percentage of recovery represented by the instant settlement shall only to increase, further supporting approval.

Recognized risks of continued litigation properly include "the fact that a class might not even be certified, Plaintiffs may lose at trial, and Defendant is likely to appeal any adverse orders or judgment" along with any specific risks presented by the claims alleged and the facts and evidence present in the case. See e.g. *Pearson v. P.F. Chang's China Bistro, Inc.*, No. 13-CV-2009 JLS (MDD), 2018 WL 2316885, at *7 (S.D. Cal. May 21, 2018). Ultimately, the weight and impact of these risks on the likelihood of recovery is highly subjective and is often based upon the reasoned experience of class counsel. *Gordillo v. Ford Motor Co.*, No. 1:11-CV-01786 MJS, 2014 WL 2801243, at *8 (E.D. Cal. June 19, 2014) ("Plaintiffs' counsel experience allows counsel to be keenly aware of the risks involved in such matters."); *Carter v. Anderson Merch., LP*, No. EDCV 08–0025–VAP, 2010 WL 1946784, at *8 (C.D.Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."); *Riker v. Gibbons*, No. 3:08–cv–00115–LRH, 2010 WL 4366012, at *4 (D.Nev. Oct.28, 2010) ("The recommendation of experienced counsel in favor of settlement carries a great deal of weight in a court's determination of the reasonableness of a settlement."); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *10 (N.D. Cal. Apr. 1, 2011), supplemented, No. C-06-05778 JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (Recognizing "Class Counsel's extensive experience with class actions, familiarity with the strengths and weaknesses of Plaintiffs' claims, and assessment of

the benefits of settlement and the risks")

As stated *supra*, each of the claims alleged by Plaintiff are derivative of the underlying off-the-clock work allegations, meaning that there is little variance amongst the risk of non-recovery across each claim. As part of Plaintiffs initial assessment included in the Motion for Preliminary Approval, Counsel assessed an aggregate 50% risk factor reduction for all combined risks involved in successfully bringing the claims through class certification, the various inevitable motion challenges such as summary judgement and decertification, and through trial. See Dkt. 51, p. 18. When applying this risk factor reduction, Counsel estimated that the instant settlement represented approximately 47% of Defendant's net exposure. See *Aguilar v. Wawona Frozen Foods*, No. 115CV00093DADEPG, 2017 WL 2214936, at *5 (E.D. Cal. May 19, 2017)(Recognizing that an approximate 47% recovery "is far greater than the percentage recovered in many other wage-and-hour class actions heard in federal courts" and "support[s] an above benchmark attorney fee award").

In calculating what they believed to be a reasonable risk factor reduction for this case, Class Counsel took into consideration their considered views on the strength and weaknesses of the claims, their experience regarding the likelihood of success in obtaining class certification in cases asserting similar claims under similar factual circumstances, case specific risks regarding the facts and evidence relied upon, and the risks presented by novel issues of law presented by the action.

Perhaps the most pressing of the case-specific risks in this action included the risk that the novel issues of law presented to the Cal. Supreme Court in *Huerta* and *Naranjo*, would be decided in a way that would limit or wipe out several of the claims alleged in this action. Several other risks not factored into the base exposure analysis have already been identified *supra*, and even more risks were considered such as potential certification issues regarding the wide variety of work positions encompassed by the class, difficulties in establishing damages based upon Defendants' security badge records, difficulties in establishing damages for meal period violations where

the meal period exceeded the statutory 30 minute minimum and the time spent on unpaid would not bring the total meal period length below 30 minutes, etc.

Ascribing a risk percentage to these factors is ultimately subjective; however, as will be discussed *infra*, Counsel's proposed 50% risk reduction proved to be a very conservative estimate; as evidenced by the fact that the Cal. Supreme Court's recently issued decisions in *Huerta* and *Naranjo* did not fall in favor of the Plaintiffs in relation to the specific issues presented by this action and instead served to reduce the total potential trial recovery well below the amount estimated by Counsel at the time of preliminary approval.

> **d)**    **The Instant Settlement Now Exceeds 100% of the Estimated Percentage of Recovery At Trial.**

As discussed *supra*, the Cal. Supreme Court's decisions in *Huerta* and *Naranjo* would have had a significant impact on Plaintiff and the Class' potential recovery at trial. Because these decisions were both rendered after preliminary approval was granted, the impact of these decisions was discussed in detail as part of Plaintiffs Motion for Approval of Fees, Costs, and Incentive Awards. See Dkt. 57, at pp.14-17. So as to avoid unnecessary duplication, that discussion is incorporated again herein by reference. Id.

Put simply, when factoring the inability to establish liability for the alleged unpaid "walk-time" violations pursuant to *Huerta*, and the likely inability to recover any civil penalties for the derivative wage statement violations in the wake of *Naranjo*, it is estimated that the potential recovery at trial would now equal approximately $3,398,302. See Dkt. 57, at pp. 16-17. That amount is considerably less than the current $4,000,000 settlement, even before taking into consideration the other remaining risk factors involved in successfully obtaining class certification and prevailing at trial. This weighs heavily in favor of final approval of the instant settlement.

> **2.**    **The Risk, Expense, Complexity, and Likely Duration of Further Litigation Weigh in Favor of Settlement Approval**

"In the context of a settlement . . . the test is not the maximum amount plaintiffs

might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." (*Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 250 (2001)). As evidenced by the fact that this case involved numerous risks and hinged upon novel issues of law, as described in detail above, a successful result in this action was far from certain, and continued litigation of these issues through the appellate court(s) would have been slow and costly. In fact, settlement class members would receive nothing unless Plaintiff won at trial and then ultimately prevailed on the likely appeal to follow, a process that would take a minimum of two to three years.

Fortunately, the non-reversionary Settlement provides substantial cash payments to members of the settlement class now, without the substantial risks and inevitable delays of further litigation. (*See Campbell v. First Inv'rs Corp.*, 2012 WL 5373423, at *5 (S.D. Cal. 2012) (recognizing that the process of establishing entitlement to damages and the potential for delay and appeals weighed in favor of settlement approval)).

### 3. The Risk of Obtaining and Maintaining Class Action Status Through Trial Supports Final Approval

This factor weighs heavily in favor of final approval because this "risk" is always present. First, the class must succeed in its motion to certify the class. (Fed. R. Civ. Proc. 23(c)(1)(A)). Then it must defeat the inevitable motion to decertify. (*See* Fed. R. Civ. Proc. 23(c)(1)(C)). Then, if successful at trial, certification can yet again be challenged in the appellate proceedings. (*See* Fed. R. Civ. Proc. 23(f)). These issues weigh heavily in favor of final approval of this Settlement.

### 4. The Amount Offered in Settlement Supports Final Approval

Defendant will pay $4,000,000.00, less approved deductions, to the 1,887 settlement class members. Each settlement class member will receive a substantial settlement payment, and the total settlement amount likely exceeds the amount that could be recovered by these same class members at trial. Put simply, the settlement was

reached at perhaps the most opportune point in litigation in terms of maximizing recovery for the class; a feat unlikely to be repeated if final approval is not granted.

Further, "the Court's inquiry 'is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'" (*Ross v. Trex Co., Inc.*, 2013 WL 6622919, at *4 (N.D. Cal. 2013) (quoting *Hanlon*, 150 F.3d at 1027); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement in which the class received payments totaling 6% of potential damages)). Here, there is no doubt that the instant settlement is the fair, adequate, and collusion free, as the $4,000,000 class recovery was obtained only after years of hard-fought litigation, after Plaintiff's Class Certification Motion was filed, and originated from the Parties acceptance of a neutral proposal by Magistrate Judge Butcher.

### 5.    The Extent of Discovery Completed and the Stage of the Proceedings Supports Final Approval

When litigation has advanced to the point where "the parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approval. (*See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Here, as discussed in Plaintiff's Preliminary Approval Motion, the parties had engaged in extensive discovery prior to settlement. Plaintiff propounded three sets of document production requests, two sets of interrogatories, and one set of requests for admissions. As a result, Defendants provided substantive interrogatory and admission responses along with over **fifty-nine thousand (59,000)** pages of documents for Plaintiff's examination and review. Defendant also provided detailed electronic records relating to class member time/pay, and badge swipe data. Plaintiff took the **depositions of nine (9) of Defendant's designated 30(b)(6) witnesses** and was deposed himself. Further, Plaintiff engaged a highly respected data analysis expert, Sean Chasworth of Phillips, Fractor & Company, LLC, to analyze data and evidence in this case for purposes of both mediation and class certification. Informally, as part of mediation

efforts, Defendants also identified the number of putative class members and aggrieved employees, the number of workweeks for all putative class members, and for the subset of aggrieved employees, and produced a sampling of class member pay and time records for approximately 15% of the putative class members. See Dkt 51, at pp. 9-10. Accordingly, the extent of discovery decisively supports final approval of the Settlement. (*See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009)).

### 6.    The Views of Experienced Counsel Support Final Approval

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." (*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quotation omitted)). Courts recognize that "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." (*Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988)). In this case, Class Counsel are highly skilled in class action litigation, as evidenced by the previously filed declarations of Mr. Kennedy and Mr. Davtyan in support of Plaintiff's Motions for Class Certification, Preliminary Approval, and Attorney Fees, Costs, and Incentive Awards  (Dkt Nos. 41-1, 41-5, 51-1, 51-2, 57-1, 57-2.) Mr. Kennedy and the attorneys at his firm have all participated in numerous class actions, regularly file contested certification motions, and often succeed in the same. (Dkt. 57-1, ¶¶ 15-26). Under Mr. Kennedy's guidance, the firm has actively devoted itself to the steps needed to keep this case moving forward, and evaluated the pending Settlement at length, and has concluded that the proposed Settlement offers excellent benefits to the settlement class members, which is evidenced by the extremely low objection and opt-out rates. Class co-counsel, Mr. Davtyan, also has extensive experiencing representing employees in wage-and-hour class actions, and also fully supports the Settlement. (Dkt. 57-2, ¶¶ 1-8). Thus, this factor weighs in favor of final approval.

/ / /

### 7.    The Government Participant Factor Supports Final Approval

No government entity participated directly in this case, but Plaintiff does represent the State of California's interests as a private attorney general pursuant to PAGA. The Settlement allocates $150,000 to the PAGA claim, with 75% of that amount to be paid to the LWDA pursuant to Labor Code § 2699(l). Plaintiff has provided the required notice to the LWDA of the settlement and related allocations, and the LWDA has not indicated any opposition.

### 8.    The Reaction of the Settlement Class Supports Final Approval

As discussed supra, only four timely opt-outs were received out of the 1891 class members who were provided notice of the settlement. Of the remaining 1,887 "Participating" Class Members only three objections were raised – each of which appear to be a result of confusion as to whether or not they personally suffered the violations alleged in this action. Each of these frivolous objections is stated in full as follows:

Objection 1: "Unfair labor code"

Objection 2: "I have not worked any overtime at CAES"

Objection 3: "I have heard of the claim regarding the non-exempt employee not getting paid but I don't remember that this happened to me"

(Islas Decl., Ex B. [Objections].)

Given that these stated objections equate to less than 0.16% (i.e. approximately a tenth of a single percent) of the total settlement class and do not identify any legitimate grounds which would lead Counsel or this Court to question the fairness, adequateness, or reasonableness of the settlement, this factor also decisively favors final approval of the Settlement.

## IV.    CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court:

(a) find that the Settlement is fair, adequate, and reasonable;

(b) affirm its prior order preliminarily certifying the case for settlement purposes;

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT

(c) enter the proposed Final Approval Order filed herewith;

(d) approve the concurrently pending motion for fees, costs, and enhancement award; and

(e) grant any other relief the Court deems just and proper.

DATED:  July 18, 2024

**MARLIN & SALTZMAN, LLP**
**D. LAW, INC.**

By: ___*s/ Cody R. Kennedy*___
     Alan S. Lazar
     Cody R. Kennedy
     Emil Davtyan
     Attorneys for Plaintiffs

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF SETTLEMENT