1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 WILLIAM WIGHTMAN, on behalf of himself and for all other current and former aggrieved employees,<br><br>Plaintiffs,<br><br>v.<br><br>COBHAM ADVANCED ELECTRONIC SOLUTIONS INC.; and DOES 1 - 100, inclusive,<br><br>Defendants. | Case No.:  21-CV-1784 TWR (DEB)<br><br>**ORDER GRANTING: (1) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; (2) GRANTING IN PART MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD; AND (3) APPROVING JOINT STIPULATION CONSENTING TO MAGISTRATE JUDGE JURISDICTION**<br><br>(ECF Nos. 57, 59, 62, 65) |

Presently before the Court are Plaintiff William Wightman's ("Plaintiff") unopposed Motion for Final Approval of Settlement (ECF No. 59, "Mot."),  Motion for Attorneys' Fees, Costs, and Enhancement Award (ECF No. 57, "Fee Mot."), Supplemental Brief in support of Motion for Final Approval of Settlement and Motion for Attorneys' Fees, Costs, and Enhancement Award (ECF No. 62, "Supp."), and Plaintiff and Defendant Cobham

Advanced Electronic Solutions, Inc.'s ("Defendants")[1] Joint Stipulation to Consent to the Assignment of This Action to Magistrate Judge Daniel Butcher to Retain Continuing Jurisdiction over Settlement (ECF No. 65, "Joint Stip.").  The Court held a Fairness Hearing on August 29, 2024.  (*See* ECF No. 64.)

Plaintiff and Defendants have reached the terms of settlement for a putative class action.  The Settlement Agreement between Plaintiff and Defendants (together, the "Parties") is conditioned upon, among other things, the Court's final approval.  Capitalized terms in this Order shall have the same meaning as in the Settlement Agreement unless otherwise indicated.  (*See* ECF No. 51-1, Ex. A ("Settlement Agreement").)

## BACKGROUND AND PROCEDURAL HISTORY

On September 3, 2021, Plaintiff commenced this action against Defendant Cobham Advanced Electronic Solutions, Inc. in the Superior Court of California, County of San Diego.  (*See* ECF No. 1-1 ¶ 1, Ex. A.)  Plaintiff asserted causes of action for (1) failure to pay hourly wages (Cal. Lab. Code §§ 510, 558, 1194, and 1198); (2) failure to provide uninterrupted employee meal periods (Cal. Lab. Code §§ 226.7 and 512(a)); (3) failure to provide uninterrupted employee rest periods (Cal. Lab. Code § 226.7); (4) failure to provide accurate written wage statements (Cal. Lab. Code § 226); (5) Unfair Competition (Bus. & Prof. Code §§ 17200, *et seq.*); and (6) violation of California's Private Attorneys General Act ("PAGA") (Cal. Lab. Code §§ 2698, *et seq.*).  (*See id.*)

The action was removed to this Court on October 18, 2021.  (ECF No. 1-1, ¶ 4, Ex. C.)  On July 8, 2022, Plaintiff filed his First Amended Complaint ("FAC").  (ECF No. 15.)

---

[1]   The Settlement Agreement provides that "[p]ursuant to an internal reorganization that occurred on or about January 1, 2023, all employees of Defendant Cobham Advanced Electronic Solutions Inc. located at the San Jose and San Diego facilities were transferred by such Defendant to CAES Systems LLC and all liabilities associated with the Action were assumed from such Defendant by CAES Systems LLC."  (Settlement Agreement at 2 n.1.)  Accordingly, "Defendants" refers to CAES Systems LLC as successor to Cobham Advanced Electronic Solutions Inc.

On January 11, 2023, the Parties participated in private mediation; however, no settlement was reached.  (Settlement Agreement ¶ 40.)  On August 14, 2023, Plaintiff filed his Motion for Class Certification.  (*See* ECF No. 41.)  On August 22, 2023, the Parties attended a Mandatory Settlement Conference ("MSC") with U.S. Magistrate Judge Daniel E. Butcher.  (*See* ECF No. 44.)  At the conclusion of the MSC, Judge Butcher made a mediator's proposal, which the Parties ultimately accepted on September 13, 2023. (Settlement Agreement ¶ 40; *see also* ECF No. 46.)

## THE PROPOSED SETTLEMENT AGREEMENT

The Parties agreed to settle this action on a class-wide basis for $4,000,000.  (*See* Settlement Agreement ¶ 20.)  The Settlement Agreement defines the Class Members as, "[a]ll individuals who worked for Defendants in California as a non-exempt, hourly paid employee at any time during the period from September 3, 2017 through the date of preliminary approval."  (*Id.* ¶ 6 (the "Settlement Class").)

The limited scope of release entered into by participating Class Members is defined by the Settlement Agreement as follows:

> [A]ll claims, demands, rights, liabilities, and/or causes of action of any nature and discretion whatsoever, known or unknown, in law or in equity, whether or not concealed or hidden, that have been asserted or that might have been asserted, arising during the period from and including September 3, 2017 through the date of preliminary approval which were alleged or could have been alleged based upon the facts asserted in the Complaint or First Amended Complaint for unpaid wages other compensation allegedly owed, or for damages, penalties (including without limitation waiting time penalties under Labor Code section 203), restitution, interest, liquidated damages, attorneys' fees, or costs, or any other recovery based on or arising out of the claims and allegations alleged in the Complaint or First Amended Complaint Pursuant To California Code Of Civil Procedure § 382 or FRCP 23, including under the California Labor Code and corresponding provisions of Wage Orders, for: (1) Failure to Pay Wages Including Overtime as Required by Labor Code §§ 510 and 1194; (2) Failure to Provide Meal Periods as Required by Labor Code §§ 226.7, 512, and IWC Wage Order 7-2001; (3) Failure to Provide Rest Periods as Required by Labor Code §§ 226.7, 512; (4) Failure to Provide Accurate Itemized Wage Statements as Required by Labor Code § 226; (6) Violation of California Business & Professions Code sections 17200 et seq.; and (8) any

and all corresponding claims that could have been brought under California or federal law relating to the claims and/or facts alleged in the complaint including under the Fair Labor Standards Act (FLSA) that might have occurred during the Class Period based on facts and claims alleged in the complaint, including claims for failure to pay wages (including overtime or premium wages) due to time worked but not recorded.

(*See* Settlement Agreement ¶ 46(a).)

Additionally, in his capacity as a private attorney general, the named Plaintiff acting on behalf of himself and as proxy or agent of the Labor and Workforce Development Agency ("LWDA") and State of California, will release PAGA claims comprised of:

[A]ll claims, demands, rights, liabilities, and/or causes of action of any nature and discretion whatsoever, known or unknown, in law or in equity, whether or not concealed or hidden, that have been asserted or that might have been asserted in the Complaint and First Amended Complaint and Plaintiff's Notice to the LWDA based upon the facts alleged therein, arising during the period from and including September 3, 2020 through the date of preliminary approval for claims under the California Private Attorneys General Act ("PAGA"), Labor Code section 2699, et. seq., regardless of whether they opt-out of the Class Settlement.

(*See id.* ¶ 46(b).)

The PAGA Period for purposes of the Settlement is limited to "September 03, 2020, through the date of Preliminary Approval." (*Id.* ¶ 26.)

The settlement amount for each Settlement Class Member shall be determined based upon each class member's applicable workweeks during the class and PAGA periods respectively. (*See id.* ¶¶ 10, 48(a).)

In addition, $150,000 of the net settlement fund will be allocated for the civil penalties under PAGA, with 75% of that amount being paid to the LWDA, and the remaining 25% being paid to the aggrieved employees ("PAGA Group Members") based upon the Pay Periods worked by the PAGA Group Member during the PAGA Period divided by the aggregate number of Pay Periods worked by the PAGA Group during the PAGA Period. (*See id.* at ¶¶ 25, 48(a), 48(d).)

4

Pursuant to the Settlement Agreement, settlement checks that remain uncashed after one hundred and eighty (180) days from the date the check is mailed will be paid to the State of California's Unclaimed Property Fund in the name of the Settlement Class Member and/or Aggrieved Employee. (*See id.* at ¶ 48(a)(iv).) No portion of the Maximum Settlement Amount will revert to Defendants. (*See id.* at ¶ 48(a).)

Plaintiff requests a Class Representative Service Award of up to $37,500 for his work as the class representative in connection with this case. (*See id.* at ¶ 48(b).) Class Counsel seek reduced attorneys' fees of 25% of the Settlement Fund (i.e., $1,000,000.00), and a reimbursement of up to $80,000.00 for out-of-pocket costs incurred in the action. (*See id.* at ¶ 48(c); *see also* Supp. at 2.) The Settlement Agreement provides for Settlement Administration Costs of up to $17,500. (*See* Settlement Agreement ¶ 48(e).)

## LEGAL STANDARD

It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Svc. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class actions readily lend themselves to compromise because of the difficulties of proof, the risks of litigation, and the extended time to resolution. "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Utility Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

The district court has broad discretion to approve Rule 23 settlements and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1036 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). A court considers several factors in determining whether a settlement agreement is "fair, reasonable, and adequate" under Rule 23(e). The Rule provides that a court should consider whether: (1) "the class representatives and class counsel have adequately represented the class;" (2) "the proposal was negotiated at arm's length;" (3) "the relief provided for the class is adequate,"

taking into consideration the risks associated with continued litigation, the effectiveness of distributing the proposed relief to the class, the terms of any proposed attorneys' fees, and the underlying settlement agreement; and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e).

In determining whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litig.*, No. 02-ml-1475, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Where, however, the parties negotiate a settlement agreement before the class has been certified, 'settlement approval "requires a higher standard of fairness" and "a more probing inquiry than may normally be required under Rule 23(e)."'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (quoting *Dennis v. Kellog Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). Specifically, "such [settlement] agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011).

The district court exercises its sound discretion in approving a settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). In exercising its discretion, however, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The Ninth Circuit has clearly defined the limits of the Court's inquiry:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual

settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Id.*

This Court already preliminarily has found that the requirements of Federal Rule of Civil Procedure 23 are satisfied. (*See* ECF No. 55, "Order.") As discussed below, the relevant factors demonstrate that final approval of the Settlement is warranted, as it remains fair, reasonable, and adequate. (*See id.*)

## MOTION FOR FINAL APPROVAL

### I.    Class Notice Comports with Rule 23 and Due Process

Rule 23 and due process require that the settlement class receive the best notice practicable under the circumstances, which was provided here. This Court approved the Class Notice as to form and content, and further found that the proposed Notice of Settlement and notice plan met the requirements of due process and was the best notice practicable under the circumstances. (*See* Order at 8–10.) As reflected in the Islas Declaration, the notice mailing here resulted in only six undeliverable notices (or, 0.3% of the total Class). (ECF No. 59-1 ("Islas Decl.") ¶ 7; *see also* ECF No. 60 ("Supp. Islas Decl.") ¶ 7.)

The Parties and the Settlement Administrator followed the schedule for the settlement process approved by the Court—including dissemination of the class notice. (*See id.* Islas Decl. 3–10; *see also* Order at 10–11.) Defendants timely provided the Settlement Administrator with the Class List. (Islas Decl. ¶ 3.) The Settlement Administrator mailed the Settlement Notice Packets to the updated list of 1,891 individuals on the Class List on May 9, 2024. (*Id.* ¶ 5.)

The notice process used in this case apprised settlement class members of the Settlement and gave them the chance to opt-out or object. (*See id.* ¶¶ 5–10.) Given the positive results, the class notice process employed here far exceeded the requirements of Rule 23, and thus satisfies due process.

/ / /

## II.    The Settlement Was Reached As the Result of Arm's-Length Negotiations

The Settlement was reached following a full day of private mediation before mediator Steve Pearl and two court-led settlement conferences before Magistrate Judge Butcher.  (*See* ECF No. 51-1 ("Kennedy Decl. I") ¶ 8; ECF No. 57-1 ("Kennedy Decl. II") ¶ 10.)  Further, the decision to settle was made only after full investigation, discovery, motion practice, and ongoing certification preparation.  (*See* Kennedy Decl. I ¶¶ 4–9; Kennedy Decl. II ¶¶ 6–11.) This process reflects the zealous efforts of Class Counsel to champion the interests of the settlement class.  The fact that the settlement efforts were overseen both by Steve Pearl, a highly regarded private class action mediator, and Magistrate Judge Butcher, further demonstrates the non-collusive nature of the Settlement.  (*See* Kennedy Decl. II ¶ 10); *see also In re Bluetooth*, 654 F.3d at 948; *Feyko v. AAD Partners LP*, No. 11-cv-5511, 2014 WL 12572678, at *7 (C.D. Cal. 2014) ("Settlements reached with the help of a mediator are likely non-collusive.").  As such, the Settlement was a result of arm's-length negotiations conducted in good faith.

## III.    The Settlement Is Fair, Reasonable, and Adequate

In evaluating the fairness, reasonableness, and adequacy of a class settlement, courts consider and balance a number of factors, including: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement."  *Hanlon*, 150 F.3d at 1026 (citing *Torrisi*, 8 F.3d at 1375).  The Court finds that this Settlement warrants final approval under each of these factors.

### A.    The Strength of Plaintiff's Case Supports Final Approval

Class Counsel have determined that the Settlement is in the best interest of the Class, as it guarantees substantial payments to the Class, without the risk or delay resulting from litigation and appeals.  (*See* Mot. at 8–17.)

1    Each of the claims arises (either directly or derivatively) from the three types of
2    allegedly uncompensated off-the-clock work identified in Plaintiff's Class Certification
3    Motion.  (*See* ECF No. 41 at 16–32.)  The first and most prevalent type of off-the-clock
4    work task was "walk-time" spent within Defendants' facilities, where employees were
5    subject to Defendants' onsite security procedures.  Specifically, this was the time spent by
6    employees, such as Plaintiff, walking from the entrance of the worksite to their clock-in
7    station.  (*Id.*; *see also* Mot. at 9; Supp. at 4–5.)  The underlying theory was that once an
8    employee entered the worksite, they were subjected to Defendant's onsite rules and security
9    procedures applicable to all employees – such as requirements to display their
10   identification badges; requirements to adhere to all security rules and procedures;
11   prohibitions against certain cell phone usage; and adherence to Defendants' code of
12   professional conduct – and thus were subject to a sufficient degree of control for such time
13   to be compensable.  (*See* ECF No. 41 at 16–32; *see also* Mot. at 9; Supp. at 4–5.)  This
14   theory of liability was relatively novel, having only been addressed by district courts in the
15   class certification context without the benefit of any binding decisions determining whether
16   liability could be satisfied under such circumstances.  *See, e.g.*, *Utne v. Home Depot U.S.A.,*
17   *Inc.*, No. 16-cv-01854, 2018 WL 1989499, at *3 (N.D. Cal., Mar. 30, 2018).

18   The California Supreme Court addressed a nearly identical theory of liability in its
19   recent decision, *Huerta v. CSI Elec. Contractors*, 15 Cal. 5th 908, 930 (2024).  In *Huerta*,
20   the plaintiff had argued that after entering the employer's parking facility and at all times
21   thereafter while driving to the worksite entrance, he was subjected to similar, generally
22   applicable rules, such as "safety and personal protective equipment rules; anti-
23   discrimination and antiharassment rules; environmental rules; alcohol and drug policies;
24   rules related to being subject to searches for alcohol, drugs, and other things; and rules
25   prohibiting smoking, practical jokes, horseplay, gambling, photography, and playing loud
26   music."  *Id.* at 931–32.  The California Supreme Court held that liability could not be
27   established by the employer's requirement to adhere to these types of rules alone.  *See id.*
28   at 928–29.  Consequently, had a settlement not been reached in this action, Plaintiff likely

would not have been able to recover anything under this theory, which accounted for the vast majority of alleged violations.

The second type of off-the-clock work task was uncaptured time spent "donning and doffing" certain equipment in Defendants' frock room areas.  (*See* Mot. at 9; *see also* Supp. at 5.)  Notably, this applied only to certain positions, and accounted for only a small percentage of the potential violations identified by Plaintiff's expert. (*See* Mot. at 9; *see also* Supp. at 5.)    Additionally, Defendants contended that they permitted manual adjustment of punches allowing for such work to be completed, and that they expected that a "few minutes" would be spent completing such tasks.  (*See* Mot. at 9; *see also* Supp. at 5.)

The third type of off-the-clock work task alleged was unpaid pre-shift COVID-19 screening, which took place only from March 2020 through June of 2021.  (*See* Mot. at 9–10; Supp. at 5.)  This claim was applicable only to employees, such as Plaintiff, who worked at Defendant's San Diego facility because Defendants' records and deposition testimony indicated that the San Jose facility actually captured and compensated for such time.  (*See* Mot. at 9–10.)

In addition to these risks, Class Counsel recognized other risks of continued litigation, including "the fact that a class might not even be certified, Plaintiffs may lose at trial, and Defendant is likely to appeal any adverse orders or judgment" along with the specific risks presented by the claims alleged and the facts and evidence present in this case.  *Pearson v. P.F. Chang's China Bistro, Inc.*, No. 13-cv-2009, 2018 WL 2316885, at *7 (S.D. Cal. May 21, 2018).  Specifically, "Class Counsel believe that the likelihood of certification, taking into consideration the theories of liability and evidence relied upon in this action, would not exceed 50%." (Supp. at 11; *see also* ECF No. 62-1 ("Kennedy Decl. III") ¶ 27.)  "Further, in class counsel's experience, because this case was predicated on establishing liability for 'off-the-clock' work and also involved the novel 'walk time' claim, obtaining certification would have been particularly risky." (Supp. at 11; *see also* Kennedy Decl. III ¶ 30.)  Ultimately, the weight and impact of these risks on the likelihood

of recovery is highly subjective and is often based upon the reasoned experience of class counsel. *Gordillo v. Ford Motor Co.*, No. 11-cv-01786, 2014 WL 2801243, at *8 (E.D. Cal. June 19, 2014) ("Plaintiffs' counsel['s] experience allows counsel to be keenly aware of the risks involved in such matters."); *Carter v. Anderson Merch., LP*, No. 08-cv-0025, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."); *Riker v. Gibbons*, No. 08-cv-00115, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010) ("The recommendation of experienced counsel in favor of settlement carries a great deal of weight in a court's determination of the reasonableness of a settlement."); *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778, 2011 WL 1230826, at *10 (N.D. Cal. Apr. 1, 2011), supplemented 2011 WL 1838562 (N.D. Cal. May 13, 2011) (recognizing "[c]lass [c]ounsel's extensive experience with class actions, familiarity with the strengths and weaknesses of Plaintiffs' claims, and assessment of the benefits of settlement and the risks").

The Court is satisfied that Class Counsel took into consideration their views on the strength and weaknesses of the claims, their experience regarding the likelihood of success in obtaining class certification in cases asserting similar claims under similar factual circumstances, case-specific risks regarding the facts and evidence relied upon, and the risks presented by novel issues of law presented by this action. Therefore, the Court finds that this factor weighs in favor of final approval.

## B. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Weigh in Favor of Settlement Approval

"In the context of a settlement . . . the test is not the maximum amount plaintiffs might have obtained at trial on the complaint, but rather whether the settlement is reasonable under all of the circumstances." *Herrera v. Wells Fargo Bank, N.A.*, No. 18-cv-332, 2021 WL 9374975, at *8 (C.D. Cal. Nov. 16, 2021) (quoting *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 250 (2001)). Class Counsel believe that this case involved numerous risks and hinged upon novel issues of law, as described in the Motion for Final Approval. (*See* Mot. at 8–17.) As Class Counsel explain, a successful result in

1    this action was far from certain, and continued litigation of these issues through the

2    appellate court(s) would have been slow and costly.  (*Id*.)  Class Counsel attest that the

3    Settlement Class Members would receive nothing unless Plaintiff won at trial and then

4    ultimately prevailed on the likely appeal to follow—a process that Class Counsel believes

5    would take a minimum of two to three years.  (*Id.* at 13, 15–16.)

6        Class Counsel believe that the Settlement confers substantial benefits upon each of

7    the putative Class Members, particularly in light of recent, adverse California Supreme

8    Court rulings.  Based on their own independent investigation and evaluation, Class

9    Counsel, being experienced in this area of class action litigation, have determined that the

10   Settlement is in the best interests of the Plaintiff and the putative Class.  (*See* Mot. at 8–17,

11   and 18–27); *see also Campbell v. First Inv'rs Corp*., No. 11-cv-548, 2012 WL 5373423, at

12   *5 (S.D. Cal. Oct. 29, 2012) (recognizing that the process of establishing entitlement to

13   damages and the potential for delay and appeals weighed in favor of settlement approval).

14   **C.    The Risk of Obtaining and Maintaining Class Action Status Through**

15         **Trial Supports Final Approval**

16       This factor weighs heavily in favor of final approval because this "risk" of obtaining

17   and maintaining class certification is always present.  Class Counsel recognized that

18   Plaintiff faced difficulties at class certification.  (*See* Mot. at 16.)  First, the Class would

19   have needed to succeed in its motion to certify the class.  *See* Fed. R. Civ. Proc. 23(c)(1)(A).

20   Second, it would have needed to defeat the inevitable motion to decertify.  *See* Fed. R. Civ.

21   Proc. 23(c)(1)(C).  Third, even if the class were successful at trial, certification might have

22   been overturned on appeal.  *See* Fed. R. Civ. Proc. 23(f).

23       At the time the settlement was reached, Plaintiff's Class Certification Motion was

24   pending but not yet decided by the Court (*see* ECF No. 41), presenting significant risks.

25   Even if Plaintiff had prevailed, Defendants would have had further opportunities to seek

26   decertification of some or all of the certified claims.  These issues, accordingly, weigh

27   heavily in favor of final approval of this Settlement.

28   / / /

**D.    The Amount Offered in Settlement Supports Final Approval**

Defendants have agreed to pay $4,000,000.00, less approved deductions, to the 1,886 participating settlement class members.  (Settlement Agreement ¶ 20.)  "Basic to [the process of deciding whether a proposed compromise is fair and equitable in every instance] . . . is the need to compare the terms of the compromise with the likely rewards of litigation."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968).  Accordingly, in determining whether the relief offered by way of settlement is fair, the Ninth Circuit approves of the practice of comparing the settlement to the parties' "estimates of the maximum [recovery] in a successful litigation."  *See Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 823 (9th Cir. 2012) ("While a district court must of course assess the plaintiffs' claims in determining the strength of their case relative to the risks of continued litigation, it need not include in its approval order a specific finding of fact as to the potential recovery for each of the plaintiffs' causes of action." (internal citation omitted)).  That being said, "the [c]ourt's inquiry 'is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'"  *Ross v. Trex Co., Inc.*, No. 09-cv-670, 2013 WL 6622919, at *4 (N.D. Cal. 2013) (quoting *Hanlon*, 150 F.3d at 1027); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement in which the class received payments totaling 6% of potential damages).

Plaintiff initially estimated the putative Class's maximum possible recovery to be $16,746,000 before accounting for any risks and $8,373,000 after accounting for the risks inherent in the case.  (*See* Fee Mot. at 5–6.)  Plaintiff has withdrawn his prior analysis and represents that he now calculates Defendants' total exposure as $18,473,299.71.  (Supp. at 1, 8.)  That sum comprises the following:

- Unpaid Wages Total Exposure: $3,593,055.71

    o Unpaid walk time: $2,392,126.80

    o Unpaid donning & doffing time: $332,462.91

- ○ <u>Unpaid COVID screening time</u>: $868,466
- <u>Meal Period Penalty Exposure</u>: $7,216,244
- <u>Rest Period Penalty Exposure</u>: $100,000
- <u>Wage Statement Penalty Exposure</u>: $7,564,000
- <u>Total Exposure</u>: $18,473,299.71

(*See* Supp. at 4–8; *see also* Kennedy Decl. III ¶¶ 20–23.)  Before taking into consideration any risk factors or the effect of two recent California Supreme Court decisions, the $4,000,000 settlement represented a 21.7% recovery for the class.  (Supp. at 8.)  Plaintiff applied an aggregate risk factor reduction of 50% to Defendants' total exposure in light of: (1) anticipated, contested certification proceedings; (2) the risks of trial and appeal, including the possibility of decertification, summary judgment, and motions to exclude expert testimony; (3) the risk that Plaintiff might not prevail on any of the three underlying theories of liability comprising the unpaid wage claim; (4) the risk that Plaintiff might not be able to establish Defendants "knew or should have known" the alleged unpaid work was occurring; (5) the risk that "unpaid donning and doffing time may not bring certain meal periods below 30 mins., and thus likely not result in a violation;" (6) the risk that "a significant percentage of class members will not have worked the requisite number of pay periods necessary to reach the statutory cap of $4,000 for the wage statement violation claim;" and (7) Class Counsel's experience in similar cases.  (*See* Supp. at 9–13; *see also* Kennedy Decl. III ¶¶ 24–33.)  With the 50% risk factor reduction, Defendants' total exposure was reduced to $9,236,649.86.  (*See* Supp. at 13.)  The $4,000,000 settlement, thus, represented a 43% recovery for the class.  (*See id.*)

However, as discussed above, two recent California Supreme Court decisions "have rendered Plaintiffs' previous exposure analysis overly optimistic."  (*See* Fee Mot. at 5, 7.) In the first decision, which issued four days after the Court issued its Preliminary Approval Order, the California Supreme Court held that many of the same unpaid tasks alleged in this action do not result in sufficient employer control for the unpaid tasks to be considered

compensable "hours worked."  (*See* Fee Mot. at 6 (citing *Huerta*, 15 Cal. 5th at 928–29).)
As a result,

> Plaintiff's unpaid "walk-time" theory of liability is very likely no longer
> viable, and Defendant's unpaid wage claim exposure would be reduced by the
> total value of the "walk time" sub-claim (i.e. 2,392,126.80). This leaves a
> remaining exposure of $1,200,928.91 i.e. the combined value of the
> unaffected donning/doffing and Covid screening sub-claims. The unpaid meal
> period claim would not be affected as it is based upon Plaintiff's underlying
> donning and doffing claim, leaving the estimated exposure of $7,216,244
> unchanged. The $100,000 nominal value assigned to the rest period claim also
> remains unchanged. The wage statement violation claim would be affected to
> the extent that those violations would no longer be derivative of the unpaid
> walk time, i.e. the most frequent violation, which has been alleged to occur
> each and every shift. The remaining basis for the derivative wage statement
> violations would be the unpaid Covid screening (which occurred for only 19%
> of the class period), and the donning and doffing claims (which comprised
> only 18.1% of the total identified violations.) Accordingly, the exposure value
> of that claim could be reasonably reduced to at least 37.1% (i.e. 19% + 18.1%)
> of its original estimated amount equaling a revised exposure of $2,806,244.

(Supp. at 14.)    Following *Huerta*, Plaintiff estimates Defendants' total exposure was
$11,323,416.91.  (*See id.* at 15.)   The second California Supreme Court decision, which
issued on May 6, 2024, held that any objectively reasonable, good-faith defense asserted
in litigation would preclude the award of civil penalties under California Labor Code § 226
for wage statement violations.  (*See* Fee Mot. at 6 (citing *Naranjo v. Spectrum Sec. Servs.,
Inc.*, 15 Cal. 5th 1056, 1086 (2024)).)   Consequently, Plaintiff "may no longer assert that
'wage statement violations were not inadvertent and therefore must have been knowing
and intentional.'"  (Supp. at 15 (quoting *Naranjo*, 15 Cal. 5th at 1087).)   "The hurdle to
prove that each and every one of Defendant's defenses asserted in this action are either
'unreasonable' or in 'bad faith' is particularly high, presenting a real risk that Plaintiff and
the class may recover nothing on the wage statement violation claims." (*Id.*)   Because
Plaintiff's wage statement violation claims were derivative of the unpaid wages claims,
which *Huerta* largely invalidated, and because *Naranjo* precluded the recovery of wage

21-CV-1784 TWR (DEB)

statement penalties if a good faith defense were asserted, Plaintiff's unpaid wage claims realistically were reduced in the wake of these two decisions.  (*See* Fee Mot. at 6.)

As a result, Plaintiff now estimates Defendants' total exposure for all claims is between $8,517,172.91 and $11,323,416.91 before the additional risk factor discounts are taken into consideration.  (Supp. at 15.)  Applying Class Counsel's 50% risk factor reduction, Plaintiff estimates the realistic value of the Class's claims is between $4,258,586.46 and $5,661,708.46.  (*See id.*)  The $4,000,000 settlement, therefore, represents a recovery for the class of between 70% and 94% of the total estimated exposure.  (*Id.*)

As Class Counsel note in their Supplemental brief, the original 21.7% recovery of the maximum value of the claims was strong; the current recovery of between 70% and 94% of the realistic value of the claims, after accounting for the risks inherent in this action and the impact of *Huerta* and *Naranjo*, is exceptional.  *See, e.g.*, *Baten v. Michigan Logistics, Inc.*, No. 18-cv-10229, 2023 WL 2440244, at *5 (C.D. Cal. Mar. 8, 2023) (granting final approval of wage and hour class action settlement where settlement amount of $1,750,000 amounted to "an almost-20% recovery of the estimated maximum," which was "considerable in comparison to other amounts achieved by way of settlements in class cases this [c]ourt has handled"); *Preston v. Porch.com, Inc.*, No. 21-cv-168, 2022 WL 3348428, at *3–4 (S.D. Cal. Aug. 12, 2022) (approving settlement in wage and hour class action resulting in recovery of "approximately 74% of the maximum projected exposure"); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1012 (E.D. Cal. 2019) (granting final approval of $40,000,000 class action settlement representing 48% recovery for class as a whole); *Beaver v. Tarsadia Hotels*, No. 11-cv-1842, 2017 WL 4310707, at *6 (S.D. Cal. Sept. 28, 2017) (approving $51,150,000 settlement representing "approximately 74%" of total restitution sought); *Leverage v. Traeger Pellet Grills, LLC*, No. 16-cv-00784, 2017 WL 2797811, at *7 (N.D. Cal. June 28, 2017) (preliminarily approving wage and hour settlement where the $2,850,000 settlement represented "approximately 18% of the potential 'fill-verdict' value of [the p]laintiffs' claims"); *Aguilar v. Wawona Frozen Foods*,

No. 15-cv-0093, 2017 WL 2214936, at *3 (E.D. Cal. May 19, 2017) (granting final approval of wage and hour class action settlement where $4,500,000 settlement "represented either 47 percent or 75 percent of the total anticipated recovery amount of approximately $6.175 million, depending on whether attorneys' fees were subtracted first").

Additionally, the settlement of the Aggrieved Employees' PAGA claim for $150,000 is fair and reasonable. District courts have applied "a Rule 23-like standard" asking whether the settlement of the PAGA claims is "'fundamentally fair, reasonable, and adequate.'" *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 972 (N.D. Cal. 2019) (quoting *Jordan v. NCI Grp.*, No. 16-cv-1701, 2018 WL 1409590 (C.D. Cal. Jan. 5, 2018)). "Approval, therefore, requires finding that the settlement (1) meets the statutory requirements of PAGA and (2) is fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals." *Wellons v. PNS Stores, Inc.*, No. 18-cv-02913, 2023 WL 4054696, at *1 (S.D. Cal. May 26, 2023) (citing *Aronson v. Gannett Co.*, No. 19-cv-996, 2023 WL 2025706, at *3 (C.D. Cal. Feb. 15, 2023)). Moreover, when looking into the fairness and adequacy of the PAGA settlement, "[c]ourts have raised concerns about settlements of less than 1% of the total value of a PAGA claim." *Haralson*, 383 F. Supp. 3d at 972 (internal citations omitted).

Here, the $150,000 PAGA settlement represents approximately 3.75% of the Maximum Settlement Amount. As such, it is fair and reasonable. *See, e.g.*, *Blount v. Host Healthcare, Inc.*, No. 21-cv-310, 2022 WL 1094616, at *8 (S.D. Cal. Apr. 12, 2022) (approving PAGA penalty of $50,000, which represented approximately 3% of the gross settlement amount of $1,550,000). Additionally, the Parties appropriately have allocated 75% of the civil penalties recovered—here, $112,500—to the California LWDA and the remaining 25% to the Aggrieved Employees. (*See* Settlement Agreement ¶¶ 25, 48); Cal. Lab. Code § 2699(i). Class Counsel properly notified the LWDA of the settlement and related allocations on January 3, 2024, and the LWDA has not given notice of any opposition. (*See* Mot. at 19; *see also* ECF No. 51 at 16; ECF No. 64.)

1

2

**E.      The Extent of Discovery Completed and the Stage of the Proceedings Supports Final Approval**

3

4

5

When litigation has advanced to the point where "the parties have sufficient information to make an informed decision about settlement," this factor weighs in favor of approval.  *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Parties engaged in extensive investigation and discovery prior to settlement. (*See* Kennedy Decl. II ¶ 7; Kennedy Decl. III ¶¶ 22–25.)  Plaintiff propounded several sets of document production requests, interrogatories, and requests for admissions.   (*See* Kennedy Decl. II ¶ 7.)   As a result, Defendants provided substantive interrogatory and admission responses along with substantial document productions for Plaintiff's examination and review.  (*See id.*)  Defendants also provided detailed electronic records relating to class member time/pay, and badge swipe data.  (*See id.*)  Plaintiff took the depositions of nine of Defendants' designated 30(b)(6) witnesses and was deposed himself. (*See id.*; *see also* ECF No. 57-3 ("Wightman Decl.") ¶¶ 16–17.)  Further, Plaintiff engaged data analysis expert, Sean Chasworth of Phillips, Fractor & Company, LLC, to analyze data and evidence in this case for purposes of both mediation and class certification.  (Supp. at 3–4; *see also* Kennedy Decl. III ¶ 1, Ex. 1.)  Informally, as part of mediation efforts, Defendants also identified the number of putative Class Members and Aggrieved Employees, the number of workweeks for all putative Class Members, and for the subset of aggrieved employees, and produced a sampling of class member pay and time records for approximately 15% of the putative class members.  (*See* ECF No. 51 at 9–10.)  The investigation and discovery in the case informed the proper valuation of the claims, the likelihood of class certification if the case did not settle, and the strengths of the claims if it had to be brought to trial.  (*See id.*)  Accordingly, the extent of discovery decisively supports final approval of the Settlement.  *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009).

27

/ / /

28

/ / /

1

2

### F.    Class Counsel Have Determined that the Settlement Is Appropriate and Fair to the Class

3

4

5

6

7

8

9

10

11

12

13

14

15

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quotation omitted).  In this case, Class Counsel have extensive experience litigating wage and hour class actions, as evidenced by the previously filed declarations of Mr. Kennedy and Mr. Davtyan in support of Plaintiff's Motions for Class Certification, Preliminary Approval, and Attorney Fees, Costs, and Incentive Awards.  (*See* ECF Nos. 41-1, 41-5, 51-1, 51-2, 57-1, 57-2.) Mr. Kennedy and the attorneys at his firm all have participated in numerous class actions, regularly file contested certification motions, and often succeed in the same.  (*See* Kennedy Decl. II ¶¶ 15–26.)  Class Counsel have concluded that the proposed Settlement offers excellent benefits to the settlement Class Members, which is evidenced by the low number of objections and requests for exclusion.  (*See* Kennedy Decl. III ¶¶ 33–37; Islas Decl. ¶¶ 8–9; Supp. Islas Decl. ¶¶ 8–9.)  Thus, this factor also weighs in favor of final approval.

16

17

### G.    The Class Representative and Class Counsel Have Adequately Represented the Class, and the Attorneys' Fees Are Reasonable.

18

19

20

21

22

23

24

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To satisfy constitutional due process concerns, "absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020.  "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

25

26

27

28

The Court finds that Plaintiff and Class Counsel diligently have litigated this Action, settling only after substantial discovery had taken place and following private and Court-led mediation.  (*See* Fee Mot. at 15–16.)  The record does not disclose any conflicts of interest between Class Counsel and the Class, particularly following Class Counsel's

voluntary reduction of their fee request; following the reduction in Mr. Wightman's proposed service award discussed below, he likewise does not have any conflict of interest with his fellow Class Members. (*See* Kennedy Decl. II ¶¶ 6–15; ECF No. 57-2 ("Davtyan Decl.") ¶¶ 9–12; Wightman Decl. ¶¶ 5–23.) Therefore, Rule 23(a)(4) is satisfied.

Additionally, in assessing whether the relief for a class is adequate, "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. "Ultimately, any award of attorney's fees must be evaluated under Rule 23(h), and no rigid limits exist for such awards. Nonetheless, the relief actually delivered to the class can be a significant factor in determining the appropriate fee award." *Id.*

This subfactor considers the "terms" of any proposed and agreed upon request for attorneys' fees. *See* Fed. R. Civ. P. 23(e)(C)(iii). Here, the Settlement Agreement contains an attorneys' fees provision that permits Class Counsel to apply for an attorneys' fees award of up to one-third of the Maximum Settlement Amount, which will be paid from the Maximum Settlement Amount. (*See* Settlement Agreement ¶¶ 20, 21 48(C).) Class Counsel's entitlement to such an award ultimately is contingent upon the corresponding Fee Motion, which is addressed in detail below.

District courts must be mindful that "settlement class actions present unique due process concerns for absent class members." *Hanlon*, 150 F.3d at 1026. Accordingly, "the district court has a fiduciary duty to look after the interests of those absent class members." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015). As the Ninth Circuit explained,

> [C]ourts should scrutinize pre-class certification settlements because plaintiffs' counsel may collude with the defendant to strike a quick settlement without devoting substantial resources to the case. The potential for collusion reaches its apex pre-class certification because, among other things, (1) the court has not yet approved class counsel, who would owe a fiduciary duty to the class members; and (2) plaintiffs' counsel has not yet devoted substantial time and money to the case, and may be willing to cut a quick deal at the expense of class members' interests.

In contrast, by the time a court has certified a class — the theory goes — the parties have vigorously litigated the dispute, reducing the chance that class counsel will settle on the cheap for a quick buck. By devoting substantial time and resources to the case, class counsel has skin in the game, guaranteeing his or her interest in maximizing the size of the settlement fund. Likewise, because a district court has appointed class counsel who owes a fiduciary duty to the class members, class counsel would be ethically forbidden from sacrificing the class members' interests.

*Briseño v. Henderson*, 998 F.3d 1014, 1024–25 (9th Cir. 2021) (internal citations omitted).

Here, the Parties reached their Settlement prior to class certification, and consequently, the Court must take on the fiduciary role that ordinarily would fall to Class Counsel. *See Allen*, 787 F.3d at 1223–24. Based upon the record before the Court, there is no evidence of collusion, but the Settlement Agreement does contain a "clear sailing" provision. (*See* Settlement Agreement ¶ 48(c) ("Defendants shall not oppose or object to Plaintiff's request for an award of attorneys' fees in an amount not to exceed One Million Three Hundred and Thirty-Three Thousand Dollars and Thirty-Three Cents[] ($1,333,333.33), and request for an award of reasonable costs and expenses not to exceed Eighty Thousand Dollars ($80,000).").) However, the Settlement Agreement further provides that if the Court awards Class Counsel less than the requested sum of fees and costs, the difference will revert to the Net Settlement Amount, and thus the Settlement Class (*see id.*), thereby ameliorating the collusive concerns addressed in *Briseño*. *See, e.g., Blount*, 2022 WL 1094616, at *6 (S.D. Cal. Apr. 12, 2022) (concluding "clear sailing" provision did not show signs of collusion where settlement agreement provided that any difference between fees sought and fees awarded would revert to net settlement amount, and thus, to the class).

## H.    The Government Participant Factor Supports Final Approval

No government entity participated directly in this case, but Plaintiff does represent the State of California's interests as a private attorney general pursuant to PAGA. The Settlement allocates $150,000 to the PAGA claim, with 75% of that amount to be paid to

the LWDA pursuant to Labor Code § 2699(i).  (*See* Settlement Agreement ¶¶ 25, 48(a), 48(d).)  Plaintiff has provided the LWDA with the required notice of the settlement and related allocations, and the LWDA has not indicated any opposition.  (*See* ECF No. 51 at 16; *see also* ECF No. 64.)  Therefore, this factor weighs in favor of final approval.

## I.  The Reaction of the Settlement Class Supports Final Approval

Only five of the 1,891 class members who received notice of the Settlement submitted timely requests for exclusion, resulting in a 99.74% participation rate in the Settlement.  (*See* Islas Decl. ¶¶ 8, 12.)  Of the remaining 1,886 "participating" Class Members, only three objections have been raised – none of which raise substantive concerns that would call into question the fairness, adequacy, and/or reasonableness of the settlement.[2]  (*See id.* ¶ 9, Ex. B; Supp. Islas Decl. ¶ 9.)  The full text of the three objections is as follows:

> 1. "Unfair labor code" - Jama Bavouakhoun ("Objection 1")
> 2. "I have not worked any overtime at CAES" - Rosemary Grow ("Objection 2")
> 3. "I have heard of the claim regarding the non-exempt employee not getting paid but I don't remember that this happened to me" - Angelito Musa Leonardo ("Objection 3")

(*See* Islas Decl. ¶ 9, Ex. B.)

After a court preliminarily approves a class action settlement, class members have the opportunity to object.  Fed. R. Civ. P. 23(e)(5)(A).  The objection must (1) "state whether it applies only to the objector, to a specific subset of the class, or to the entire class," and (2) "state with specificity the grounds for the objection."  *Id.*  Objectors "bear[] the burden of proving any assertions they raise challenging the reasonableness of a class action settlement."  *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 583 (N.D. Cal. 2015) (citing *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990)).  Objectors also

---

[2]     No class members appeared at the Fairness Hearing to object to the Settlement.  (*See* ECF No. 64.)

must have standing to object, and only "aggrieved" class members have standing. *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011). Thus, "[i]f [effecting the objectors' requested change] would not actually benefit the objecting class member, the class member lacks standing." *Id.* (cleaned up). Objectors also must comply with the procedural requirements for objecting, as set forth in the settlement agreement or a prior court order. *See, e.g., Moore v. Verizon Commc'ns, Inc.*, No. 09-cv-1823, 2013 WL 4610764, at *12 (N.D. Cal. Aug. 28, 2013) (overruling objections, among other reasons, "for failing to comply with the procedural requirements for objecting to the Settlement").

Here, Objection 1, which is not even a complete sentence, appears to express dissatisfaction with labor laws in general and fails to state any substantive ground for the objection to the Settlement. Therefore, the First Objection is **OVERRULED**. *See, e.g., Moore*, 2013 WL 4610764, at *10 (overruling "one-sentence objection" that "states no substantive ground" for the objection); *In re TD Ameritrade Account Holder Litig.*, Nos. 07-cv-2852, 07-cv-4903, 2011 WL 4079226, at *11 (N.D. Cal. Sept. 13, 2011) (same); *see also Hefler v. Wells Fargo & Co.*, No. 16-cv-5479, 2018 WL 6619983, at *10 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 Fed. App'x 285 (9th Cir. 2020) ("Objections that a 'case should never have been brought' and advocating 'no recovery for the Class' are contrary to the interests of the class and are therefore not a basis for finding a settlement unreasonable." (citing *Perkins v. Linkedin Corp.*, No. 13-cv-04303, 2016 WL 613255, at *4 (N.D. Cal. Feb. 16, 2016)).

Both Objections 2 and 3, which each consist of a single sentence, appear to raise concerns specific to the individual objectors such that they do not raise a genuine concern as to all Class Members. Accordingly, Objections 2 and 3 also are **OVERRULED**. *See, e.g., Feller v. Transamerica Life Ins. Co.*, No. 16-cv-1378, 2019 WL 6605886, at *8–9 (C.D. Cal. Feb. 6, 2019) (overruling objection focused "mainly on the specific facts of those individual circumstances (and not the class)" and seeking "individualized treatment" as failing to offer grounds to reject the settlement on a class-wide basis); *Roberts v. Marshalls of CA, LLC*, No. 13-cv-4731, 2018 WL 510286, at *10–11 (N.D. Cal. Jan. 23,

2018) (overruling objection to class settlement based on objector's unique circumstances because "nothing in Ms. Michaels' objection suggests this is a class-wide issue, rather than an individual one"); *Nunez v. BAE Sys. San Diego Ship Repair, Inc.*, 292 F. Supp. 3d 1018, 1042–43 (S.D. Cal. 2017) (overruling objections raising individual concerns only and explaining that "to the extent these Objectors feel that the Settlement Agreement does not adequately address their specific circumstances, the more appropriate course of action was for these Objectors to opt out of the Class, rather than bar final approval of a settlement where 99.64% of the Class Members find the Settlement to be in their best interests"); *In re TD Ameritrade*, 2011 WL 4079226, at \*12 (overruling objection that objector had not been harmed by defendant and that it would be "wrong" for him and others to profit from the suit); *see also Moore*, 2013 WL 4610764, at \*10 (overruling single sentence objection that failed to state substantive basis for objection).

## J.  The Settlement Treats Class Members Equitably

Finally, the Court finds that the Settlement treats each Class Member equitably, as each Class Member's share shall be determined based upon that member's applicable workweeks during the class and PAGA periods respectively.  (*See* Settlement Agreement ¶¶ 10, 48(a).)

## K.  Conclusion

In sum, the Court finds that the Settlement is fair, adequate, and reasonable, and that the relevant Rule 23 and Ninth Circuit factors weigh in favor of approval.

## MOTION FOR ATTORNEYS' FEES, COSTS, AND ENHANCEMENT AWARD

### A.  LEGAL STANDARD

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  In addition to the reasonableness inquiry mandated under Rule 23(h), "district courts must now consider 'the terms of any proposed award of attorney's fees' when determining whether 'the relief provided for the class is adequate'" pursuant to Rule 23(e).  *Briseño*, 998 F.3d at 1024 (quoting Fed. R. Civ. P. 23(e)(2)(C)(iii)).

1    Importantly, "whether the attorneys' fees come from a common fund or are otherwise paid,

2    the district court must exercise its inherent authority to assure that the amount and mode of

3    payment of attorneys' fees are fair and proper." *Zucker v. Occidental Petroleum Corp.*,

4    192 F.3d 1323, 1328 (9th Cir. 1999).

5        In a common fund case, as here, the Court has discretion to choose either the lodestar

6    method or the percentage-of-the-fund method when calculating reasonable attorneys' fees.

7    *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).    Under the

8    percentage-of-the-fund method, 25% of a common fund is the benchmark for fee awards.

9    *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund

10   as the 'benchmark' for a reasonable fee award, providing adequate explanation in the

11   record of any 'special circumstances' justifying a departure.").    When evaluating whether

12   the percentage sought by counsel is reasonable, the Court may consider the following

13   factors: (1) the results achieved; (2) the risks involved; (3) the skill required and quality of

14   work by counsel; and (4) awards made in similar cases.    *Vizcaino*, 290 F.3d at 1048–50.

15   Under the lodestar method, a "lodestar figure is calculated by multiplying the number of

16   hours the prevailing party reasonably expended on the litigation (as supported by adequate

17   documentation) by a reasonable hourly rate for the region and for the experience of the

18   lawyer." *Id.* at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

19       Regardless of whether the Court awards the benchmark amount or some other rate,

20   the award must be supported "by findings that take into account all of the circumstances of

21   the case." *Vizcaino*, 290 F.3d at 1048.    District courts, therefore, should perform a cross-

22   check of any calculations done in one method against those of the other method.    *See id.* at

23   1050–51.

24       **B.    Counsel's Requested Fee Award Is Reasonable**

25       Class Counsel now request attorneys' fees of $1,000,000.00 (or, 25% of the

26   Maximum Settlement Amount), which is a reduction from the $1,333,333.33 (or, 33.33%

27   of the Maximum Settlement Amount) that the Court preliminarily approved.    (*See* Supp. at

28   1–2; Order at 5, 11.)

1        1.    The Results Achieved Support Approval of the Requested Fees

"Foremost" among the "considerations" in calculating a fee is "the benefit obtained for the class," *In re Bluetooth*, 654 F.3d at 942, and "[e]xceptional results are a relevant circumstance," *Vizcaino*, 290 F.3d at 1048.  *See also Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023) ("The touchstone for determining the reasonableness of attorneys' fees in a class is the benefit to the class.").

The Settlement provides for a $4,000,000 non-reversionary common fund. (Settlement Agreement ¶ 48(a).)  No class member will have to make a claim and no money will revert to the Defendant.  (*Id.*)  Plaintiff contends that the case is centered entirely upon Defendants' alleged failure to compensate for a variety of tasks, which, on average, take up only a very short amount of time – specifically, time spent badging in and out of Defendants' facilities prior to clocking in, on-site COVID-19 checks (during a limited time period), and donning/doffing smocks and frocks (applicable only to certain positions).  (*See* Fee Mot. at 5.)  The unpaid tasks at issue ranged from mere seconds, to a "few minutes" on average per workday.  (*Id.*)  Despite the varying amounts of time at issue, the average gross recovery on a per-class-member basis equals $1,439.72 after accounting for all requested deductions from the common fund.  (*See* Supp. at 2; *see also generally* Settlement Agreement.)

In addition, Class Counsel achieved these results in the face of uncertainty as to the viability of their legal theories given the then-pending cases before the California Supreme Court regarding many of the same unpaid tasks alleged in this Action and the availability of the same civil penalties under Labor Code § 226 for wage statement violations.  As set forth above, the California Supreme Court ultimately concluded in *Huerta* that similar unpaid tasks did not result in significant enough employer control to be considered "hours worked," and thus would not give rise to liability.  *Huerta*, 15 Cal. 5th at 928–29.  In *Naranjo*, the court held that an objectively good-faith defense asserted in litigation would preclude the award of civil penalties under Labor Code § 226 for wage statement violations.  *Naranjo*, 15 Cal. 5th at 1086–87.  As discussed above, these decisions substantially

impacted Plaintiff's damages model, as Plaintiff contends that the wage statement violations were completely derivative of the unpaid wage claims. (*See* Order, *supra*, at Motion for Final Approval § III(D); Fee Mot. at 7.)

The Court agrees that this is a sizeable recovery, especially in light of the substantial diminution in the value of the claims following the California Supreme Court's recent decisions, and finds that this factor weighs in favor of approving the requested fees.

### 2. Class Counsel Faced Substantial Risks in Accepting Plaintiff's Case on a Contingency Basis

Here, Class Counsel pursued the litigation on a purely contingency basis for several years in the face of significant setbacks. (*See* Fee Mot. at 12–13.) It is well recognized that, where class litigation spans the length of years, the risks and burdens borne by class counsel are multiplied exponentially. Thus, the length and complexity of this Action supports the requested fee award. *In re Apollo Grp. Inc. Sec. Litig.*, No. 04-cv-2147, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012); *see also Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 996–97 (N.D. Cal. 2017) (finding contingent risk in case weighed in favor of multiplier where defendant "vigorously defended" case over nine years and California Supreme Court's decision in pending case had "the potential to gut plaintiffs' claims").

### 3. Class Counsel's Skill, Experience, and Quality of Work Support the Requested Fee Award

"The prosecution and management of a […] class action requires unique legal skills and abilities . . . Thus, if counsel has represented intimate knowledge of the case, and applied their unique skills to obtain favorable results, this factor should weigh in favor of an increase in the benchmark rate." *Carlin,* 380 F. Supp. 3d at 1021.

Class Counsel have extensive experience in complex class actions, as well as particular expertise in wage-and-hour class actions. (*See* ECF No. 41-1 ¶¶ 20–28; ECF No. 41-5 ¶¶ 5–7; Kennedy Decl. I ¶¶ 17–24; ECF No. 51-2 ¶¶ 4–6; Kennedy Decl. II ¶¶ 16–21; Davtyan Decl. ¶¶ 6–8.)

Further, as discussed in Plaintiff's briefing, Plaintiff contends that this case hinged upon Plaintiff prevailing on novel theories of liability which were yet untested before California's highest court. (*See* Fee Mot. at 5–8.) Plaintiff and Class Counsel did not take the first opportunity for settlement; rather, settlement was only reached after two Court-led conferences before Magistrate Judge Butcher, and a private mediation before esteemed mediator Steve Pearl. (*See id.* at 13–14; Mot. at 7.) This factor weighs in favor of approving Class Counsel's modified, requested fee award.

### 4. The Range of Fee Awards in Comparable Cases

California state and federal courts have observed that under the percentage method, "[e]mpirical studies show that, regardless [of] whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 558, n.13 (2009); *Romero v. Producers Dairy Foods, Inc.,* No. 05-cv-0484, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (same); *see also In re Heritage Bond Litig.*, 2005 WL 1594403 at *18, n.12 (noting more than 200 federal cases have awarded fees higher than 30%). Plaintiff argues, and the Court agrees, that courts in analogous cases have awarded one-third of the common fund, as opposed to 25%, where the recovery for the class was not as strong as the recovery obtained here. (*See* Fee Mot. at 9–12); *see also Preston*, 2022 WL 3348428, at *4–5 (awarding one-third of $500,000 common fund as attorneys' fees where $500,000 represented 74% of "maximum projected exposure"); *Carlin*, 380 F. Supp. 3d at 1019–20 (awarding one-third of common fund where common fund represented 48% recovery of damages). Further, courts in this Circuit routinely have authorized awards of one-third of the common fund in wage and hour actions. *See, e.g.*, *Bell v. Redfin Corp.*, No. 20-cv-2264, 2023 WL 8241534, at *4 (S.D. Cal. Nov. 28, 2023) (awarding one-third of $3,000,000 common fund in wage and hour class action settlement where "average gross payment" to each settlement class member was $658.13); *Preston*, 2022 WL 3348428, at *5 (awarding one-third of common fund in wage and hour class settlement where total recovery was $500,000 and average recovery per class member was "approximately

$1,128"); *Pasquale v. Kaiser Found. Hospitals, Inc.*, No. 08-cv-785, 2010 WL 11591905, at *3 (S.D. Cal. Mar. 15, 2010) (awarding one-third of $3,700,000 common fund in attorneys' fees where settling wage and hour class members received, on average, $13,000 each); *Deluca v. Farmers Ins. Exch.*, No. 17-cv-0034, 2020 WL 5071700, at *7 (N.D. Cal. Aug. 24, 2020) (awarding 30% of $5,400,000 common fund in wage and hour class settlement where $5,400,000 represented "approximately 46.6% of estimated total recovery" and average payment to class members was $46,929.09).    In light of this landscape, Class Counsel's request for an award of 25% of the common fund, the benchmark in the Ninth Circuit, appears presumptively reasonable.    Nevertheless, in common fund cases, it is appropriate to use a percentage calculation with a lodestar cross-check to assess the reasonableness of an attorneys' fee award.    *See Vizcaino*, 290 F.3d at 1050.

### 4.    The Lodestar Cross-Check Supports Approval of the Requested Fees

Class Counsel incurred a combined lodestar of $659,930.    (*See* Kennedy Decl. II ¶ 27; Davtyan Decl. ¶ 14.)    This action was settled only after significant discovery had taken place, including the depositions of nine designated 30(b)(6) witnesses and the exchange of over fifty-nine thousand (59,000) pages of documents, and the analysis of equally impressive sums of electronic data pertaining to the Class; review and preparation of expert reports, two mandatory settlement conferences, and a private mediation; and only after Plaintiff's class certification motion had been prepared and filed with the Court.    (*See* Fee Mot. at 15–16; Mot. at 17–18.)    Class Counsel also initiated a mass mailing and call campaign to the Class Members, resulting in numerous Class Member interviews.    (*See* Fee Mot. at 15–16.)

In addition to the declarations of counsel, the Court relies on its own knowledge and experience of customary rates concerning reasonable and proper fees.    *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).    "Recently, courts in this District have awarded hourly rates for work performed in civil cases by attorneys with significant experience anywhere in [the] range of $550 per hour to more than $1,000 per hour."

*Sengvong v. Probuild Co., LLC*, No. 19-cv-2231, 2021 WL 4504620, at *8 (S.D. Cal. Oct. 1, 2021) (collecting cases); *see also Durruthy v. Charter Commc'ns, LLC*, No. 20-cv-1374, 2021 WL 688423, at *6 (S.D. Cal. Sept. 30, 2021) (finding requested billing rates for paralegals ranging between $175 and $250 per hour reasonable and "in line" with other awards of paralegal fees in the District). Here, the Court agrees that Class Counsel's billing rates are consistent with the market for attorneys of comparable skill in the Southern District. *See In re Illumina, Inc. Sec. Litig.*, No. 16-cv-3044, 2021 WL 1017295, at *7 (S.D. Cal. Mar. 17, 2021) (finding rates of $850 to $1025 for partners, and $350 to $650 for associates to be reasonable); *see also, e.g.*, *LG Corp. v. Huang Xiaowen*, No. 16-cv-1162, 2017 WL 3877741, at *3 (S.D. Cal. Sept. 5, 2017) (finding attorney rates up to $895/hour to be reasonable for work performed in 2017); *Murphy v. City of El Cajon*, No. 18-cv-0698, 2019 WL 3936143, at *7 (S.D. Cal. Aug. 19, 2019) (finding attorney rates up to $800/hour to be reasonable for work performed in 2019).

The billing rates submitted are also consistent with rates found reasonable in other districts within California. *See*, *e.g.*, *Hefler,* 2018 WL 6619983, at *14 (finding $650-$1,250 for partners or senior counsel and $400-$650 for associates were reasonable rates); *Superior Consulting Servs., Inc. v. Steeves-Kiss*, No. 17-cv-6059, 2018 WL 2183295, at *13 (N.D. Cal. May 11, 2018) ("[R]ates of $475-$975 per hour for partners and $300-$490 per hour for associates are reasonable.").

With a lodestar of $659,930, the requested award of $1,000,000 results in a roughly 1.52 positive multiplier of the lodestar. "The Ninth Circuit has recognized that multipliers generally range from 1 to 4." *Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-6220, 2021 WL 5826230, at *17 (N.D. Cal. Dec. 8, 2021), *aff'd* 2022 WL 6943174 (9th Cir. Oct. 12, 2022) (citing *Vizcaino*, 290 F.3d at 1051 n.6). "District courts within the Ninth Circuit commonly apply multipliers in that range in California wage and hour class actions." *Id.* (collecting cases). In similar cases, courts in this District have approved multipliers in the range Class Counsel request here. *See, e.g.*, *Ludlow v. Flowers Foods, Inc.*, No. 20-cv-2059, 2024 WL 1162049, at *8 (S.D. Cal. Mar. 18, 2024) (approving lodestar multiplier of 2.86 in light of

"extraordinary results" achieved); *Bell*, 2023 WL 8241534, at *4 (approving the award of one-third of the common fund, which resulted in 1.15 positive multiplier of lodestar); *Guerrero v. U.S. Gypsum Co.*, No. 21-cv-1502, 2022 WL 18026330, at *6–7 (S.D. Cal. Dec. 30, 2022) (approving the award of 30% of the common fund, resulting in lodestar multiplier of 1.14); *Blount*, 2022 WL 1094616, at *10 (approving the award of 30% of the gross settlement amount, representing a positive multiplier of approximately 2.4); *Jamil v. Workforce Res., LLC*, No. 18-cv-27, 2020 WL 6544660, at *4 (S.D. Cal. Nov. 5, 2020) (approving fee request amounting to one-third of gross settlement proceeds, resulting in 2.14 multiplier of base lodestar); *Beaver*, 2017 WL 4310707, at *13–14 (approving the award of one-third of the settlement fund, resulting in multiplier of 2.89 of base lodestar); *Pasquale*, 2010 WL 11591905, at *4 (awarding one-third of settlement fund, representing multiplier of "less than 2 times" the lodestar); *see also, e.g.*, *Nunez*, 292 F. Supp. 3d at 1056 (granting request for fee award amounting to 25% of settlement amount, which resulted in positive multiplier of 1.82).

For the reasons discussed above—including the novel issues of law, risks to Class Counsel, and the noteworthy results—the requested multiplier of 1.52 resulting from the $1,000,000 fee request falls well within the "typical" range accepted by our courts. Accordingly, and particularly in light of the exceptional results achieved for the Class, the Court finds the requested attorneys' fees reasonable and approves the award in the sum of $1,000,000.

## C.    Counsel's Requested Costs Are Reasonable

Class Counsel request reimbursement of their out-of-pocket expenses in the sum of $79,689.  (*See* Kennedy Decl. II ¶ 5, Ex. C.)  All of the costs submitted were reasonably incurred in the prosecution of this matter over the past several years, benefitted the class, and would have been charged to a paying client had this been a non-contingency case.  The costs are, therefore, reimbursable, and the Court may award them.  *Kang*, 2021 WL 5826230, at *16 ("The principal expenses include plaintiffs' expert damages consultants […], plaintiffs' share of the mediator's fees for two mediations, and the class notices[.]");

*In re LendingClub Sec. Litig.*, No. 16-cv-02627, 2018 WL 4586669, at *3 (N.D. Cal. Sept. 24, 2018) (approving expenses of $456,084.63 covering "expert and consultant fees, court fees, travel and lodging costs, legal research fees, and copying expenses"); *In re Omnivision*, 559 F. Supp. 2d at 1047 (awarding expenses of $560,489.90 covering "photocopying, printing, postage and messenger services, court costs, legal research on Lexis and Westlaw, experts and consultants, and the costs of travel for various attorneys and their staff throughout the case"). Further, this Court already has preliminarily approved this amount, which has been disclosed to the Class. (*See* Order at 5, 11.)

**D.    The Requested Class Representative Service Award, As Modified, Is Reasonable**

Although incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. District courts must evaluate proposed awards individually, using relevant factors including, "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). "To determine the reasonableness of an incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards." *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice . . . ." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). District courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164. In this District, a $5,000 incentive award is

presumptively reasonable. *See In re Regulus Therapeutics Inc. Securities Litig.*, Nos. 17-cv-182, 17-cv-267, 2020 WL 6381898, at *8 (S.D. Cal. Oct. 30, 2020).

Here, Plaintiff argues that $37,500 is warranted to compensate him for his "dedication, service, and the risks he exposed himself to when initiating and maintaining the action over the past several years." (Fee Mot. at 20.)  Over the lifetime of this case, Plaintiff estimates that he has spent "at least 100-200 hours actively searching for documents, speaking with [his] attorneys, making personal appearances, going over discovery responses, etc.," which includes the time he spent sitting for his deposition. (*See* Wightman Decl. ¶¶ 16–17, 23.)  Plaintiff also notes that "[f]or a period of time, I had difficulty finding employment after leaving Cobham and filing this lawsuit," and that he feared prospective employers were not considering him because of the lawsuit, though he acknowledges he "will likely never know for sure." (*Id.* ¶ 19.)  Additionally, no Class Member has objected to the requested service award. (*See* Islas Decl. ¶ 9, Ex. B.)

While Plaintiff devotes a significant amount of his briefing to addressing the stagnation of class representative service awards (*see* Fee Mot. at 24–27), Plaintiff does nothing to allay the Court's concern raised in the Preliminary Approval Order—namely, that an award of $37,500 may "destroy the adequacy of the class representative," *Radcliffe*, 715 F.3d at 1164.  The average individual settlement share to be paid is approximately $1,439.72, and the requested service award is roughly twenty-six times that amount.  Even considering the highest estimated settlement award of $2,565.72, (*see* Islas Decl. ¶ 12), the proposed service award is almost fourteen times that amount.  In *Staton*, the Ninth Circuit found the district court abused its discretion in approving a settlement where the class representatives received an incentive award that was, on average, sixteen times greater than the award that the unnamed class members would receive.  327 F.3d at 975; *see also Alvarez v. XPO Logistics Cartage, LLC*, No. 18-cv-3736, 2022 WL 644168, at *7 (C.D. Cal. Feb. 8, 2022) ("The Ninth Circuit frowns upon incentive awards of $30,000 or more." (citing *Staton*, 327 F.3d at 977)).  The Court recognizes Mr. Wightman's significant service to the Class, but the proposed award, nevertheless, is grossly disproportionate to the

average sum the unnamed Class Members will recover.  As such, the Court exercises its discretion to award $12,000.  *See, e.g.*, *Alvarez*, 2022 WL 644168, at *7 (rejecting the requested award of $30,000 for each of named plaintiffs and concluding that $15,000 would be more appropriate in wage-and-hour class action with $20,000,000 settlement where the named plaintiffs dedicated more than 120 hours each to the prosecution of case, including contributing to discovery, sitting for depositions, and meeting with counsel routinely over 3.5 years of lawsuit); *Howell v. Advantage RN, LLC*, No. 17-cv-883, 2020 WL 5847565, at *5 (S.D. Cal. Oct. 1, 2020) (approving the service award of $10,000 in wage and hour class action where the plaintiff invested more than 85 hours of her time prosecuting the class action that resulted in gross settlement of $3.2 million); *Vasquez v. Kraft Heinz Foods Co.*, No. 16-cv-2749, 2020 WL 1550234, at *9 (S.D. Cal. Apr. 1, 2020) (approving the service awards of $7,500 and $3,000 to the named plaintiffs in wage and hour class action who spent significant amounts of time searching for relevant documents, sat for deposition, and were actively involved in case for four years where gross settlement amount was $3,000,000 and average settlement payment to class members was $542.77); *McGrath v. Wyndham Resort Dev. Corp.*, No. 15-cv-1631, 2018 WL 637858, at *10–11 (S.D. Cal. Jan. 30, 2018) (approving the service payments of $10,000 and $7,500 for the named plaintiffs in wage and hour class action who provided hundreds of pages of documents, participated in discovery, and attended mediation where gross settlement amount was $7,250,000 and average payment to class member would be $2,300.11).

## CONCLUSION

For the reasons set forth above, the Court **GRANTS FINAL APPROVAL** of the Parties' Settlement Agreement.  The Settlement appears to fall within the range of possible approval as fair, adequate, and reasonable, appears to be the product of arm's-length and informed negotiations, and appears to treat all Class Members equitably.  The Court further finds that the settlement of Plaintiff's California Labor Code PAGA claim is fair and reasonable and **GRANTS FINAL APPROVAL** of the Settlement and release of the PAGA claim and the payment to the LWDA in the sum of $112,500.

1    While the Court's previously articulated concerns about Plaintiff's prior exposure

2  analysis ultimately proved well-founded, the Court is satisfied with the corrected analysis

3  and supporting evidence provided in Plaintiff's supplemental briefing.  (*See generally*

4  Supp.)  The Court, however, cautions counsel that significant detail and explanation of

5  their calculations should be included as a matter of course when seeking approval of a class

6  action settlement, and should not need to be separately requested by the Court.  For this

7  reason, the Court accepts Class Counsel's offer to lower their requested fee award from the

8  originally requested 33.3% of the common fund to 25% (i.e., $1,000,000).

9    Accordingly, the Court **GRANTS** Plaintiff's Motion for Final Approval of Class

10  Action Settlement pursuant to Rule 23(e), and **ORDERS** as follows:

11    1.  The Court, for purposes of this Final Approval Order, hereby adopts and

12       incorporates by reference the definitions in the Settlement Agreement, and all

13       capitalized terms used herein, unless otherwise defined, shall have the same

14       meanings as ascribed to them in the Settlement.

15    2.  The Court **APPROVES** the Parties' Settlement as fair, adequate, and

16       reasonable and **OVERRULES** the three objections received.

17    3.  With respect to the Settlement Class, the Court finds, for purposes of

18       settlement only, that the prerequisites for class certification under Rule 23(a)

19       and Rule 23(b)(3) of the Federal Rules of Civil Procedure have been

20       **SATISFIED**, in that: (1) the number of Settlement Class Members is so

21       numerous that joinder of all Settlement Class Members is impracticable; (2)

22       there are questions of law and fact common to the Settlement Class Members;

23       (3) Plaintiff's claims are typical of the Settlement Class's claims; (4) Plaintiff

24       and Settlement Class Counsel have and will fairly and adequately represent

25       and protect the interests of the Settlement Class; (5) the questions of law and

26       fact common to Settlement Class Members predominate over any individual

27       questions; and (6) a class action is superior to other available methods for the

28       fair and efficient adjudication of the controversy.

4.    The following persons are **CONDITIONALLY CERTIFIED** as Class Members solely for the purpose of Settlement: "All individuals who worked for Defendants in California as a non-exempt, hourly paid employee at any time during the period from September 3, 2017 through March 21, 2024 (i.e. the date of preliminary approval)." (Settlement Agreement ¶ 6.) However, the following individuals who submitted timely opt-out requests shall be excluded: Christina Y. Bryant, Jeffrey C. Yee, Phillip Bailey, Boonmee Sisawang, and Michael A. Leggett. (*See* Islas Decl. ¶ 8.) There remain 1,886 Class Members participating in the Settlement. (*See id.* ¶ 12.)

5.    The Court has determined that the Class Notice, which was transmitted to the Settlement Class members, fully and accurately informed all persons in the Settlement Class of all material elements of the proposed Settlement— including the plan of distribution of the Settlement Amount, the claims that will be released by each Settlement Class Member who does not exclude himself or herself from the Settlement, the application for a fee award, the application for an expense award, the application for the class representative service award, the procedure to exclude themselves from the Settlement and become opt-outs or to file an objection to the Settlement, and that participation in the Settlement releases all claims as set forth more fully in the Settlement Agreement—constituted the best notice practicable under the circumstances, constituted valid, due and sufficient notice to all Settlement Class members, and complied fully with California law, the U.S. Constitution, and any other applicable laws.

6.    Due and adequate notice of the proceedings having been provided to the participating Class Members, and a full opportunity having been offered to them to participate in this hearing, it is hereby determined that except for the five individuals who elected to exclude themselves by timely submitting a

1    request for exclusion, all the remaining Class Members are bound by this

2    Order and final judgment of dismissal.

3    7.    The Court **FINDS** the settlement of Plaintiffs' PAGA claim fair, adequate,

4    and reasonable.  Of the $150,000 allocated to settle the portion of the case

5    brought under the California Labor Code's Private Attorneys General Act

6    ("PAGA"), 75% of the PAGA penalties, $112,500.00, shall be paid to the

7    California Labor and Workforce Development Agency ("LWDA"), and the

8    remaining 25% of the PAGA penalties, $37,500.00, shall be part of the Net

9    Settlement Fund.  (*See* Settlement Agreement ¶ 48(d).)  Plaintiff represents

10    that the LWDA has received notice of the proposed settlement in the manner

11    required by the LWDA, and Class Counsel confirmed during the Fairness

12    Hearing that the LWDA was properly notified of the Settlement and has not

13    objected or commented upon the Settlement.  (*See* Mot. at 19; *see also* ECF

14    No. 51 at 16; ECF No. 64.)

15    8.    In full compliance with the requirements of due process, on May 9, 2024, the

16    Settlement Administrator mailed the Notice of Proposed Class Action

17    Settlement ("Class Notice") by first-class mail to each Settlement Class

18    member at the last known address, based upon Defendants' business records

19    and reasonable address verification measures.  (Islas Decl. ¶ 5.)

20    9.    The plan of distribution, as set forth in the Settlement Agreement providing

21    for the distribution of the Net Settlement Amount to participating Settlement

22    Class members, is approved as being fair, reasonable, and adequate pursuant

23    to California law and all applicable law.  (*See* Settlement Agreement ¶ 48(a).)

24    10.    The Court **GRANTS IN PART** Plaintiff's Fee Motion.    The Court

25    **CONFIRMS** Plaintiff William Wightman's appointment as Class

26    Representative and **AWARDS** Plaintiff a Class Representative Service

27    Payment of $12,000.    The Court finds this amount fair and reasonable

28    considering Plaintiff's contributions to this litigation.

11. The Court further **CONFIRMS** Phoenix's appointment as the Settlement Administrator and **APPROVES** the payment of Phoenix's fees and expenses in the sum of $17,500.

12. The Court further **CONFIRMS** Cody R. Kennedy and Alan Lazar, of Marlin & Saltzman LLP, and Emil Davtyan, of D.Law, as Class Counsel for the Settlement Class and **AWARDS** Class Counsel $1,000,000 in attorneys' fees and $79,689 in costs.

13. Upon entry of this Order and final judgment of dismissal, in accordance with the terms of the Settlement Agreement, the claims of Plaintiff and the participating Class Members against Defendants are fully, finally and forever released, relinquished and discharged. (*See* Settlement Agreement ¶ 46.)

14. This Order and final judgment of dismissal resolves all pending claims against Defendants in this action. Finding no just reason for delay, this final approval order and final judgment of dismissal are hereby certified as final under Rule 54(b).

15. Without further order of the Court, the Parties may jointly agree to reasonable extensions of time to carry out any provisions of the Settlement Agreement.

16. The Court **ORDERS** Phoenix to distribute the Net Settlement Amount to the Class Members who did not opt out of the Settlement in accordance with the terms of the Settlement Agreement.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

21-CV-1784 TWR (DEB)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17.    The Court **APPROVES** the Parties' Joint Stipulation consenting to the jurisdiction of the Honorable Daniel Butcher, U.S. Magistrate Judge, for purposes of the Court's retention of jurisdiction over the settlement (*see* ECF No. 65).  Accordingly, the Court **REFERS** the matter to Magistrate Judge Butcher.

**IT IS SO ORDERED**.

Dated:  September 6, 2024

_____

Honorable Todd W. Robinson
United States District Judge

21-CV-1784 TWR (DEB)